EDWARD MEDLINSKY & others *vs.* PREMIUM CUT BEEF
COMPANY & another.

Middlesex.     October 7, 8, 1943. — September 14, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Equity Pleading and Practice*, Amendment, Answer, Counterclaim, Re-
hearing.  *Contract*, Consideration, Implied.

In a suit in equity seeking cancellation by a corporation of a certificate
of title to land with a building thereon registered in its name, and that
a new certificate be issued to one of the plaintiffs, a straw who had
been the defendant corporation's immediate predecessor in title, no
error of law appeared in the allowance of an amendment to the an-
swer, or in the denial of a motion to strike it out, where the amendment
in substance set up a counterclaim that, if the title was not properly
in the corporation, then the corporation had been induced to expend
money for repairs on the building by a promise to convey the prop-
erty to it made by one, since deceased, who had been the real owner
of the property although the title had been in the name of the straw,
and whose widow and next of kin, with the administrator of his estate,
were the other plaintiffs; and that the corporation was entitled to
reimbursement for its expenditure:  such averments stated a claim,
based on a failure of consideration for the expenditure entitling the
corporation to reimbursement and arising out of the same transaction
as that upon which the bill was based.

A decree in a suit in equity requiring the estate of a former beneficial
owner of land with a building thereon, before a certificate of title
thereto held by a corporate defendant should be cancelled as prayed
for in the bill, to reimburse the corporation, as claimed in its answer,
for money expended by it for repair of the building in reliance upon a
promise by such beneficial owner to convey the property to it, was
reversed and the case was remanded for further hearing in the trial
court where a master had found merely that no express promise to
make such a conveyance or such reimbursement had been made,
whereas the answer should be interpreted as also setting up an im-
plied promise to convey or, upon failure to do so, to reimburse, con-
cerning which the master had made no findings; and where also the
master did not find facts relating to a contention by the plaintiffs that
the expenditure was made by the corporation with the consent of all
its stockholders either as a gift or without expectation of reimburse-
ment.

In a suit in equity by a former straw owner of registered land and by
the administrator of the estate and next of kin of the former real owner
for cancellation of a certificate of title to the land issued to the defend-

ant upon the registration, "wrongfully and fraudulently, without . . . permission or authority," of a deed of the land by the straw to the defendant, a claim of the defendant, based on a loan of money to the former real owner which he had used to acquire the land in the name of the straw, would not be a proper subject of a counterclaim under Rule 32 of the Superior Court (1932).

Plaintiffs in a suit in equity, by their failure to demur to or answer a counterclaim, were not precluded from attacking findings of a master on issues raised by, or portions of the decree based on, the counterclaim.

BILL IN EQUITY, filed in the Superior Court on September 22, 1941, by Edward Medlinsky, Lizzie Karp, widow of William Karp, and Edward Karp, Hyman Karp, Rose Rogers, Emma Barth, Gertrude Dane, and Ronnie Soreff, next of kin of William Karp, (to whom were added by amendment Edward Karp, administrator of the estate of William Karp,) against the Premium Cut Beef Company and Maurice Karp, alleging, among other things, that the defendant Maurice Karp "wrongfully and fraudulently, without the knowledge, permission or authority of" William Karp, registered a deed of certain registered land by the plaintiff Medlinsky to the defendant Premium Cut Beef Company and obtained the issuance of a certificate of title to that defendant, and praying, among other things, that such certificate of title "be decreed a cloud on the plaintiffs' title and be cancelled, and a new certificate of title be issued to the plaintiff Medlinsky."

The plaintiffs contended that paragraph 10 of the defendant's answer, substituted by amendment and described in the opinion, violated Rule 29 of the Superior Court (1932) in that it did not state defences in simple terms, contained certain statements of evidence alleged to be irrelevant, and as a counterclaim violated G. L. (Ter. Ed.) c. 214, § 12, in that it was not brief and included irrelevant and immaterial matter; and, after the amendment was allowed, moved to strike out the substitute paragraph 10 under Rule 24 of the Superior Court (1932).

The plaintiffs by appeals brought to this court the questions of the propriety of allowing the amendment of the answer, of the denial of the motion to strike out the sub-

stitute paragraph 10 thereof, of an interlocutory decree confirming reports of a master, and of the final decree.

*Richard B. Walsh,* for the plaintiffs.

*M. G. Rogers, (A. Barlofsky* with him,) for the defendants.

RONAN, J.   This is an appeal by the plaintiffs from a final decree ordering the corporate defendant to cancel a certificate of title to a parcel of registered land upon the payment of a certain sum found to be due it from the plaintiff administrator of the estate of William Karp and also ordering the said administrator to pay a further sum for money lent by the defendant company to William Karp.

All the individual parties to this suit, other than Medlinsky and Lizzie Karp, are the children of Lizzie Karp and William Karp.  The premises in question were owned for many years by William Karp, although the title was in the name of his wife, Lizzie Karp.  The city of Lowell, having acquired title through tax foreclosure proceedings, sold them in November, 1939, for $900 to Medlinsky who purchased them in behalf of William Karp with funds that Karp had obtained from the Premium Cut Beef Company.  William Karp, hereinafter called Karp, was apprehensive that his creditors might attach the property if he took title in his own name.  The Premium Cut Beef Company and the Lowell Beef Company, a corporation owned and controlled by Karp, occupied the first floor of the premises.  The books of both companies were kept by Karp's daughter under his supervision.  The capital stock of the Premium Cut Beef Company, hereinafter called the company, consisted of twenty shares, twelve of which were owned by Karp, four by his wife and four by his son, the defendant Maurice Karp, hereinafter called Maurice.  In October, 1939, all the stock was transferred in trust to the plaintiff Edward Karp.  In accordance with the terms of the trust all stockholders had the right to vote and to become officers of the company, and upon the death of certain stockholders their stock was to be transferred to others.  All stock certificates after they were made out in the names of various stockholders were retained by the company and kept in the stock book.  Karp had invested $3,000 in the company

and Maurice had invested $1,100. Both received weekly wages. Karp was paid $10 each week. Neither received any other compensation from the company. No dividends were declared. The earnings of the company were deposited in a bank in the name of Maurice and amounted to $10,000 in 1940. No mention of this account appeared in the company's books. Extensive repairs were made upon the property during the first four months of 1940 and were paid for by funds withdrawn from this account by Maurice at the request of Karp. Early in 1940, Maurice suggested to his father that, in view of the large sums the company was expending for repairs, it was unsafe to have the title remain in the name of Medlinsky and that Medlinsky should execute a deed to the company. Maurice told his father that it would make no difference to Medlinsky. Karp was agreeable to having the company named as grantee as he deemed it unsafe on account of his creditors to take title in his own name and thought that the interest of his wife and himself in the company would give him adequate protection if the deed ran to the company. Medlinsky executed a deed purporting to convey the premises to the company. Karp soon thereafter made up his mind not to register this deed, but Maurice, although he knew this, took the deed and had it registered on May 29, 1940, without the knowledge or consent of his father. Notwithstanding the demand of Karp that the property be reconveyed to Medlinsky, when in November, 1940, he learned of the transfer, no conveyance was made and the company now holds the certificate of title. The company ceased paying rent to Karp in 1940, and has since managed the property as its own.

In addition to the facts already recited, which appear from the master's report, the master also found that Karp believed he could expend the funds of the company as he saw fit; that throughout the life of the company and up to the time of his death in August, 1941, Karp looked upon the company "and exercised control over it as if it was his own business"; and that Maurice knew this and made no objection to the expenditure of the funds for repairs of the property. The report further shows that the company

lent Karp $1,500 and that this sum appeared upon the books of the company as a loan payable by Karp. The plaintiffs appealed from a decree confirming the report and overruling their exceptions thereto.

The defendants were permitted to amend their answer by alleging that Medlinsky purchased the property for the company, and by setting up by way of counterclaim that, if title was not properly in the company, then the company was induced to expend its funds in repairs by the promise of Karp to convey the property to it and that it was entitled to reimbursement. The plaintiffs appealed from orders, which we consider as interlocutory decrees, *Wallin* v. *Smolensky*, 303 Mass. 39; *Boston* v. *Santosuosso*, 308 Mass. 202, allowing the amendment and denying their motion to strike it out. The allowance of the amendment came within the broad power conferred upon the judge by the statute, G. L. (Ter. Ed.) c. 231, § 51, which has always been liberally construed so as to enable a party to sustain the cause of action for which the proceeding was intended to be brought or to enable him to set up a legal defence. *Ames* v. *Beal*, 284 Mass. 56. *Bucholz* v. *Green Bros. Co.* 290 Mass. 350. *Smith* v. *Miles*, 296 Mass. 126. The plaintiffs were not entitled as matter of law to have their motion to strike out entertained under Rule 29 of the Superior Court (1932). See *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 491; *MacLennan* v. *MacLennan*, 311 Mass. 709, 713. If, as the counterclaim alleged, the company was induced to pay for the repairs by the promise of Karp to convey the property in consideration of such payments and Karp refused to perform after the payments were made, then there was a failure of consideration which would entitle the company to reimbursement. *Cochrane* v. *Forbes*, 257 Mass. 135. *Goshein* v. *Chavenson*, 261 Mass. 403. *Buckman* v. *American Express Co.* 262 Mass. 299. The claim upon the pleadings arose out of the same transaction as that upon which the bill was based. *Stuart* v. *Sargent*, 283 Mass. 536. *Colella* v. *Essex County Acceptance Corp.* 288 Mass. 221. *Anderson* v. *Connolly*, 310 Mass. 5.

The defendants had the burden of proving the counter-

claim which rested upon the ground that the money was expended in accordance with an "understanding, promise and agreement" between Karp and the company that, in consideration of the payments to be made by the company, the premises would become the property of the company. The master found that no express promise or contract to reimburse the company or to convey the property to it was made. The allegations of the counterclaim were not restricted to an express contract but they were broad enough to include an implied contract to convey the property. *Butler* v. *Butler*, 225 Mass. 22. *Kelly* v. *First Citizens Bankers Corp.* 316 Mass. 520. *Lufkin* v. *Harvey*, 125 Minn. 458. *Anderson* v. *Estate of Akins*, 99 Neb. 630. *Colloty* v. *Schuman*, 47 Vroom, 502. *Producers' Supply Co.* v. *Shirley*, 69 Okla. 117. *Andrew* v. *Brecker*, 229 Wis. 526. The master apparently construed the answer as setting forth a counterclaim resting entirely upon an express contract, since he made no ultimate finding on the issue whether there was an implied contract to convey the property and a failure to do so which would result in an implied obligation upon Karp to reimburse the company. It was the duty of the master to determine that issue which we think was open under the pleadings. The judge considered that there was enough in the report to warrant an inference of such an implied obligation. None of the findings of the master was directed to this issue. The control of the company's funds by Karp was considered by the master only as bearing upon the existence of an intention of Karp to put the title to the property in the name of the company. The absence of an express promise to convey the property or to reimburse the company for the expenditures would not negative the existence of an implied promise to do so, *Manilla* v. *Houghton*, 154 Mass. 465, 467; *Walker* v. *Russell*, 240 Mass. 386; *Humes* v. *Barron*, 263 Mass. 583; *Therrien* v. *Leblanc*, 282 Mass. 328; *Donahue* v. *Dal, Inc.* 314 Mass. 460, and the absence of an intention to reimburse the company would not bar the company from recovering the payments if they were not intended as a gift to Karp and if the company expected to be paid therefor either in property or in money and Karp knew or

ought to have known of this expectation of the company at
the time the funds were expended in the improvement of
his property.   "Of course it does not matter whether the
defendant expected to pay for the services or not, the ques-
tion is as to the natural import of his overt acts."   *Spencer*
v. *Spencer*, 181 Mass. 471, 473.   *Day* v. *Caton*, 119 Mass.
513.   *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass.
382.   *Evers* v. *Gilfoil*, 247 Mass. 219.   *Tower* v. *Jenney*, 279
Mass. 208.   *Smith* v. *Knapp*, 297 Mass. 466.   *Oatley* v.
*Duprey*, 312 Mass. 281.

It is indisputable that the company's funds were paid for
the repairs on Karp's property.   The company could recover
the amount expended if Karp repudiated an implied under-
taking to convey the property in consideration of these pay-
ments.   The plaintiffs contend that there can be no recovery
since the funds expended were a gift to Karp or at least were
paid out without any expectation of Karp or the company
that the company was to be reimbursed.   The company was
organized for the purpose of buying and selling provisions,
and Karp as president and Maurice as treasurer would not
by virtue of their offices have authority to make a gift of the
company's assets to the former.   The master's report does
not disclose any action by the directors with reference to the
acquisition or repair of Karp's property.   The report does
not show that Lizzie Karp ever knew of the existence of the
deposit from which the funds were withdrawn or that she
participated in the expenditures or even knew that the funds
were expended for the improvement of her husband's prop-
erty.   She is one of the plaintiffs and now takes the position
that nothing is due the company.   The master did not pur-
port to decide whether the funds were paid out as a gratuity
or, if not, whether there was any implied obligation upon
Karp's estate to reimburse the company although that issue
was open under the pleadings and it would be unsafe for us
to attempt to decide it upon the findings of the master, all
of which were directed to another issue and none of which
was decisive of the issue in question.   We cannot know until
all the facts are determined whether the expenditures were
made as a gift with the knowledge and assent of all the stock-

holders or whether they were made for a consideration. The stockholders of a corporation own all the beneficial interest in the corporate property and, where the rights of creditors are not involved, corporate assets may be transferred either with or without consideration to one of its officers or to a third person if the transfer is effected with the knowledge and assent of all the stockholders. In such circumstances the corporation would have no just ground of complaint even if the transfers were gifts. It would be immaterial whether the property was transferred directly to the recipient or paid out to his personal creditors. *Underwood* v. *Lennox*, 242 Mass. 357. *Dome Realty Co.* v. *Gould*, 285 Mass. 294. *Hennessey* v. *Nelen*, 299 Mass. 569. *In re National Piano Co.* 252 Fed. 950. *Atherton* v. *Beaman*, 264 Fed. 878. *Sweet* v. *Lang*, 14 Fed. (2d) 762. *American Bonding Co.* v. *Laigle Stave & Lumber Co.* 111 Ark. 151. *Lake Park Development Co.* v. *Paul Steenberg Construction Co.* 201 Minn. 396. *Coleman* v. *Hagey*, 252 Mo. 102. *McLaughlin* v. *Corcoran*, 104 Mont. 590. *Little* v. *Garabrant*, 90 Hun, 404. *Reif* v. *Equitable Life Assurance Society*, 268 N. Y. 269. *MacQueen* v. *Dollar Savings Bank Co.* 133 Ohio St. 579. *Oliver* v. *Safe Deposit & Title Guaranty Co.* 315 Penn. St. 552. *Memphis Lumber Co.* v. *Security Bank & Trust Co.* 143 Tenn. 136. *Hill Syrup Co.* v. *Frederick & Nelson*, 133 Wash. 155. *Hamilton* v. *Menominee Falls Quarry Co.* 106 Wis. 352. Compare *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 114; *M. McDonough Corp.* v. *Connolly*, 313 Mass. 62, 67.

The findings of the master are insufficient to support the inference drawn by the judge that the money was expended for a consideration to be furnished by Karp and that an obligation arose upon the part of Karp to reimburse the company. The case must be remanded to the Superior Court for further hearings in accordance with this opinion. *Erickson* v. *George B. H. Macomber Co.* 211 Mass. 311. *Siciliano* v. *Barbuto*, 265 Mass. 390. *Harvey* v. *Crooker*, 267 Mass. 279. *Comstock* v. *Soule*, 303 Mass. 153. *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217. *Coe* v. *Coe*, 316 Mass. 423.

The final decree also established an indebtedness of $1,500 and interest in favor of the company against the estate of Karp.  This sum had been obtained by Karp from the company and the greater portion of it had been used by him in purchasing the property from the city.  As this indebtedness was not included in the counterclaim, no affirmative relief relative to it could be granted.  The decree in this respect was beyond the scope of the pleadings.  *Seder* v. *Kozlowski,* 304 Mass. 367.  *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172.  *Drury* v. *Hartigan,* 312 Mass. 175.  *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176.

As the suit must be remanded to the Superior Court, it might be appropriate to determine whether this error in the final decree might be cured by an amendment to the counterclaim.  Amendments have frequently been allowed after a full hearing upon the merits in order to have the pleadings comply with the evidence, to eliminate a variance between the allegations and proof, and to avoid the necessity of a new trial.  *Pizer* v. *Hunt,* 253 Mass. 321, 331.  *Tompkins* v. *Sullivan,* 313 Mass. 459, 461.  An amendment to a counterclaim ought not to be allowed unless enough appears to bring the case within Rule 32 of the Superior Court (1932).  The fact that the major portion of the loan was used by Karp to purchase the property from the city in the name of Medlinsky but for his own benefit did not give the company any beneficial interest in the property.  *McDonough* v. *O'Niel,* 113 Mass. 92.  *Davis* v. *Downer,* 210 Mass. 573.  *Smith* v. *Smith,* 313 Mass. 687.  The two loans which make up the $1,500 and are treated as one loan did no more than create the relation of creditor and debtor.  The loan was made before any alleged arrangement with reference to the repairs, and upon the facts as disclosed by this record the loan, which has always appeared upon the books of the company as due from Karp, arose out of a contract separate and independent from any arrangement as to repairs.  The making of the loan is not involved in the title to the premises.  It was not included in the wrongful registration of the deed by Maurice Karp which was the only wrong of which

the plaintiffs complain. The fact that the instant controversy would not have arisen if Karp had not acquired the property is not enough to bring the loan within the rule. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 609. *Mitchell* v. *Moore,* 87 Ark. 166.

There is nothing in the contention of the defendants that the plaintiffs, not having filed any demurrer or answer, cannot attack the findings made by the master on the counterclaim or attack those portions of the final decree granting relief on the counterclaim. Upon motion the counterclaim might have been taken for confessed. *Royal Indemnity Co.* v. *Perry,* 296 Mass. 149. *Davis & O'Connor Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401. But even if the counterclaim had been taken for confessed it would not support a decree establishing this indebtedness. *Commissioner of Banks* v. *McKnight,* 281 Mass. 467, 475–476. *Mayor of Cambridge* v. *Dean,* 300 Mass. 174, 175. *Ciborowski* v. *Kosciak,* 310 Mass. 704, 707. Here no liability on the counterclaim for reimbursement for repairs was established by the findings of the master so far as they went, and the defendants could not prevail upon any claim for the $1,500 because that was not included within the counterclaim. One ought not to be held liable upon a cause of action different from that alleged unless he waives his right to have the proof confined to the allegations. *Becker Transportation Co. Inc.* v. *Department of Public Utilities,* 314 Mass. 522, 526. *Commonwealth* v. *Albert,* 307 Mass. 239, 244. Compare *Blume* v. *Oil-O-Chron, Inc.* 287 Mass. 52; *Daley* v. *District Court of Western Hampden,* 304 Mass. 86.

The interlocutory decrees allowing the defendants to amend their answer and denying the plaintiffs' motion to strike out the amendment are affirmed. The plaintiffs' exceptions to the master's report were properly overruled and the interlocutory decree to that effect should be affirmed. The final decree is reversed. Further proceedings in accordance with this opinion are to be had in the Superior Court.

*So ordered.*