Stanley Zolnierczky *vs.* Mary Stawicki & another.

Essex.    November 6, 1959. — December 15, 1959.

Present: Wilkins, C.J., Williams, Counihan, Whittemore, & Cutter, JJ.

*Payment. Corporation,* Corporate funds.

Where it appeared in a suit in equity against the plaintiff's mother-in-law that the defendant, desiring to help the plaintiff and his wife, contributed a large portion of the purchase price in a purchase of all the stock of a small corporation and took a majority of its shares of stock under an agreement with the plaintiff that when he repaid her the amount

she had contributed she would transfer her stock to him, that to her knowledge a substantial part of money subsequently repaid her came from income of the corporation, but that she was only interested in being repaid and did not object to such source of repayment, and that the plaintiff sought in the suit to have the defendant ordered to transfer her stock to him upon payment to her of a remaining balance of the amount she contributed,. it was in the circumstances no defence to the suit that the corporation's income had been used in making the repayments.

BILL IN EQUITY, filed in the Superior Court on October 2, 1957.

The suit was heard by *Lurie*, J., on a master's report.

*Robert Pierce*, for the defendant Stawicki.

*William E. O'Brine*, for the plaintiff.

COUNIHAN, J. This is a bill in equity brought by the plaintiff against Mary Stawicki and the plaintiff's wife, Ilona, who is the daughter of Mary. It involves part of the capital stock of the Lucky Star, Inc., the owner of a cafe with a liquor license in Peabody.

The suit was referred to a master who filed a report. Upon successive recommittals he filed two supplemental reports all of which were later confirmed by an interlocutory decree. A final decree was entered ordering that "upon the tender to . . . Mary Stawicki by the plaintiff of the sum of $6,634.11, plus $431.21 interest and without costs . . . Mary Stawicki shall indorse over and transfer to the plaintiff the fifty-two shares of stock in Lucky Star, Inc., now held by her." The suit comes here upon an appeal by Mary Stawicki from the final decree. There was no error.

It appears from the facts found by the master in his several reports that early in 1949 the plaintiff conceived the idea of buying the real estate on which the cafe was located and all of the capital stock of the Lucky Star, Inc., which consisted of one hundred shares. Cordial relations then existed between the parties to this suit.

After negotiations, the plaintiff agreed with the former owner of Lucky Star, Inc., to purchase all of the capital stock of Lucky Star, Inc. Mary Stawicki, who was motivated by a desire to help her daughter and her daughter's

husband, the plaintiff, to acquire the cafe, contributed a substantial sum of money toward the purchase price. She received fifty-two shares of the capital stock of Lucky Star, Inc. Ilona received twenty-eight shares and the plaintiff twenty shares. Mary was elected president and treasurer and Ilona was elected clerk. The plaintiff was named manager, and he conducted the business of Lucky Star, Inc., from the time they acquired it until the time of the hearing before the master at least.

There was an oral agreement between Mary and the plaintiff, either acting for himself or as the manager of the corporation, that repayments would be made to her.

The master expressly found that "it was agreed that when the plaintiff repaid Mary . . . she would assign her holdings in the business over to the plaintiff."

About five months prior to the institution of this litigation, there was a breach in the cordial relations which existed between the plaintiff and his wife and his mother-in-law although his wife continued living in the tenement above the cafe, occupying a room separate from the plaintiff. Perhaps as a result of that breach a meeting was held by the parties at which the plaintiff sought delivery to him of the fifty-two shares held by Mary upon the payment to her of an amount of money which the plaintiff asserted was due her as the balance of the money she had advanced, with interest. Mary refused to make such a delivery and this litigation ensued.

The master also found that Mary furnished the sum of $23,382 toward the purchase price, that the "total payments made by the plaintiff to Mary Stawicki amount to $16,747.89," and that the "balance due to Mary Stawicki is $6,634.11." The master also found that he was unable to determine how much of the money repaid to Mary by the plaintiff came from his personal income and how much came from the income of the cafe, although he said that a very substantial part of money used to repay Mary came from the income of the corporation.

There is nothing in the record to show that Mary ever

objected to the payments made to her or that she ever inquired as to the source of such repayments. There was likewise nothing in the record to show that the rights of any creditors of the corporation were affected.

Lucky Star, Inc., was a "close corporation" in which the parties here concerned owned all of the capital stock. It was said in *Medlinsky* v. *Premium Cut Beef Co.* 317 Mass. 25, at page 32, with ample citation of authority, "The stockholders of a corporation own all the beneficial interest in the corporate property and, where the rights of creditors are not involved, corporate assets may be transferred either with or without consideration to one of its officers . . . if the transfer is effected with the knowledge and assent of all the stockholders. In such circumstances the corporation would have no just ground of complaint even if the transfers were gifts." See *Samia* v. *Central Oil Co. of Worcester*, 339 Mass. 101, 109.

The findings of the master are sufficient to support an inference that Mary accepted such money in repayment of the advances she had made with full knowledge that a substantial part of it came from the income of the corporation. It is apparent from the conduct of Mary prior to the breach between the plaintiff and his wife that Mary, who had advanced the money to help her daughter and the plaintiff get a start, was only interested in repayment and was not concerned with the source from which it came.

It is important to note that the corporation itself was not a party to these proceedings, and in any event we do not think it material to determine how much of the repayment came from the income of the corporation. The important matters to determine are the amount of money Mary advanced, the amount she received in repayment, and the balance due her. These matters were determined by the final decree which was supported by findings in the reports of the master.

The final decree is to be modified by adding interest to be paid to Mary from the date of the final decree to the date of the rescript and as so modified is affirmed with costs of the appeal to the plaintiff.                    *So ordered.*