Hy Hurwitz vs. Parkway Country Club, Inc.

Suffolk.    December 8, 1961. — February 21, 1962.

Present: Wilkins, C.J., Spalding, Williams, Whittemore,
& Spiegel, JJ.

*Contract,* Of employment, Implied contract.  *Damages,* Nominal damages.
*Practice, Civil,* Exceptions: whether error shown.  *Error,* Whether
error shown.

Evidence in an action of conversations between representatives of the de-
fendant, a corporation operating a golf club, and the plaintiff warranted
a finding that the plaintiff was hired by the defendant's representatives
to arrange for the holding of a championship golf tournament at the
club and was to be paid the fair value of his services, but did not war-
rant a finding that his compensation was fixed in a certain specific
amount alleged by him.  [664–665]
One entitled to be paid by a corporation operating a golf club the fair
value of his services in arranging for the holding of a championship
golf tournament at the club could not recover more than nominal dam-
ages under a count on an account annexed in an action against the
corporation where there was no evidence to show the value of his serv-
ices.  [665–666]
Where the evidence in an action of contract did not warrant a verdict for
the plaintiff on the first of two counts in the declaration or a verdict for
more than nominal damages on the second count, but the issue submitted
to the jury by the charge was which of two substantial amounts the
plaintiff was entitled to recover and there was a general verdict for the
plaintiff for one of such amounts, an exception by the defendant to the
charge must be sustained and a new trial had although the defendant
had not moved for a directed verdict on the first count or requested
an instruction limiting the damages recoverable on the second count.
[666]

Contract.    Writ in the Superior Court dated June 23,
1958.

The defendant alleged exceptions following trial before
*Paquet,* J., at which there was a verdict for the plaintiff in
the sum of $4,580.

The case was submitted on briefs.

*Louis Karp,* for the defendant.

*Albert R. Mezoff,* for the plaintiff.

WILLIAMS, J.   This is an action of contract in which the
plaintiff is a sports writer for a well known Boston daily
newspaper and the defendant a corporation which owns and
operates a golf club in Canton known as the Blue Hills
Country Club.   There was evidence that in the spring of
1955, the plaintiff told one Sidney Covich, vice-president of
the defendant, that he could obtain or help place the 1956
Professional Golfing Championship of America at a local
club.   Covich replied that he would discuss the matter with
his "partners" and requested the plaintiff to obtain forms
of contracts relating to the tournament.   The plaintiff ob-
tained the forms and delivered them to Covich.   In the sum-
mer of 1955, the plaintiff attended a meeting of the club at
which Covich, Joseph Corkin, president of the club, and his
two brothers were present.   The Corkin brothers were in-
troduced as "partners" of Covich and officers of the de-
fendant corporation.   The officers agreed to take on the
tournament.   The plaintiff said "that since the defendant
club was not owned by the members themselves, it would be
unlikely that there would be a hundred percent coöperation
from the membership, and that there would be a great work
load."   Joseph Corkin said, "Well, you're the guy getting
the tournament, you do the work."   The plaintiff replied,
"I'll be glad to do my share.   Of course, I am going to put
some time in this and I expect to get something out of it."
The Corkins and Covich replied, "Don't worry.   You'll be
well taken care of, extra so, in the event if the tournament
made a profit."   The plaintiff arranged for the tourna-
ment, was named tournament director, and was given an
office in the Boston Chamber of Commerce in July.   From
August, 1955, until the tournament in July, 1956, he made
necessary arrangements for the tournament and had fifty
to sixty conferences with representatives of the defendant.
In the late winter or early spring of 1956, the plaintiff told
Covich that he would like to receive a $5,000 guaranty, plus
a percentage of profits which might accrue as a result of the
tournament.   Covich said it was all right with him if it was
all right with the Corkins.   The plaintiff saw the Corkins

and also told them what he wanted. Joseph Corkin said, "we are going to take good care of you. You don't have to worry about your money. You don't need any five thousand dollars or any guarantee." The plaintiff said, "well, this has been an understanding for sometime now, but I'd like to get something in writing." Joseph Corkin called in a man who had worked for the Corkins for ten to twelve years and asked him if he ever had a contract in writing from the Corkins. The man said "no" and Corkin asked the plaintiff if that answer was not good enough for him. The plaintiff said it was and did not obtain anything in writing to state that his guaranty was $5,000 with an additional percentage of the profits. In May or June, 1956, the plaintiff requested money from the defendant "in advance for my work in the tournament." He received $1,000 and asked, "Shall I regard this as a down payment on the guarantee or the percentage? How shall this be?" to which the reply was "Don't worry. We'll take care of it and fix it all up when the tournament is over."

After the tournament, he sent a bill to the defendant for $4,000. At a conference with Covich about getting the money Covich told him, "Well, you did a wonderful job," and told him to see the Corkins. Joseph Corkin denied owing him any money and said "they wanted to make a settlement with me." The defendant asked that the answer be struck and the judge ruled, "He may have the talk, not as respects the settlement, any admissions that might have been made are admissible." The plaintiff answered that Corkin said, "Why don't we give you another thousand dollars and let's call this thing off and I said, 'I am owed four thousand dollars.'" To the refusal of the court to strike this answer out, the defendant excepted. After a short recess, the judge told the jury: "I allowed some evidence relative to some talk about payments of amounts between this man and one of the Corkins, defendants. It was error to admit it. I now strike it. In other words, it is just as if you never heard it. I had an idea it might have been admissible on one phase. I find, on further consideration,

that it was not so admissible." In procuring and staging the tournament, the plaintiff spent about 200 days from July, 1955, to July, 1956. On some of these days he spent two hours and on other days twenty hours. As of November 21, 1960, he had not been paid. Covich testified that the plaintiff was to get $1,000 for his work and a free family membership at the club.

In his action of contract the plaintiff joined the corporation, Alvan Corkin, Herbert Corkin, Joseph Corkin, and Sidney Covich as defendants. At the trial, he waived all counts of his declaration except 1 and 2 which were against the corporation. In count 1 the plaintiff alleged that the defendant contracted to pay him a minimum sum of $5,000. Count 2 was on an account annexed, item 1 of the account being for $5,000 without further description. The plaintiff specified (1) that the contract alleged in count 1 was entered into in the spring or early summer of 1955; (2) the contract alleged in count 1 was oral; (3) the plaintiff rendered the services alleged by him in count 2 between June, 1955, and July 20, 1956. The defendant did not move for a directed verdict or submit requests for instructions on either count. The jury returned a general verdict for the plaintiff in the amount of $4,580.

The defendant excepted to the admission of evidence respecting the talk about settlement and to the following portion of the instructions to the jury: "Did they make an agreement or a bargain or a contract whereby Hurwitz was to do certain work and for that work receive a minimum of five thousand dollars? Or did they make an agreement or a contract whereby Hurwitz was to do certain work and for that work receive one thousand dollars? That is the real issue in this case, because nowhere has it been contended that whatever Hurwitz was hired to do, that he failed to do. In other words, the defendant does not set up a breach of the contract on the part of Hurwitz. They do not come into court and say, 'Well, he was supposed to do this and that and thus and so, but he didn't do it and, therefore, he is not entitled to his money.' That isn't the claim here.

The claim on behalf of the defendant is that the agreement was to have Mr. Hurwitz do certain work in connection with the promotional activities of this P.G.A. National Tournament and for that he would receive a certain amount of dollars, as they say, one thousand dollars.''

It does not appear that there was any evidence from which it could be found that the plaintiff and corporate defendant entered into a contract as alleged by the plaintiff in count 1 either in the spring or early summer of 1955 as specified or at any other time. There was evidence that the plaintiff was engaged in the early summer to obtain the 1956 professional golfers tournament for the country club and it could be found that it was expected both by the defendant and the plaintiff that he would be paid for his services. No price was fixed and the only compensation to the plaintiff for which the corporation became liable was that measured by the fair and reasonable worth of the plaintiff's services. *Day* v. *Caton,* 119 Mass. 513, 515. *Silver* v. *Graves,* 210 Mass. 26, 29–30. *Evers* v. *Gilfoil,* 247 Mass. 219, 223–224. *Bridges-Wilson Corp.* v. *University Contracting Co.* 314 Mass. 257, 259–260. *Medlinsky* v. *Premium Cut Beef Co.* 317 Mass. 25, 31.

In the late winter or early spring of 1956, after the plaintiff had devoted time to the tournament project, he took up with the corporate officials the matter of a guaranty of $5,000 with a percentage of future profits. The talk related to providing the plaintiff with security for the compensation he would be entitled to under his existing contract of employment. It could not be construed as an offer or acceptance of an offer to enter into a new contract. At that time or shortly after, the plaintiff was paid $1,000. We think the judge erred in charging the jury that the question for their decision was whether the contract of the parties provided for payment of compensation in the amount of $5,000 or in the amount of $1,000. In our opinion, there was no evidence warranting the finding of a contract for either amount.

The plaintiff was entitled to recover the fair value of his services under his second count. *Manilla* v. *Houghton,* 154

Mass. 465, 467. *Chandler* v. *Baker,* 191 Mass. 579, 583. *Walker* v. *Russell,* 240 Mass. 386, 393. *Altman* v. *Goodman,* 255 Mass. 41, 43–44. *Humes* v. *Barron,* 263 Mass. 583, 584–585. *Donahue* v. *Dal, Inc.* 314 Mass. 460, 461–462. *Clayton* v. *Modern Shrinking & Refinishing Co.* 341 Mass. 731, 732. He did not, however, offer any evidence of their value, and they were of such a special nature that a jury could not from their ordinary knowledge and experience determine what they were reasonably worth. *Driscoll* v. *Bunar,* 328 Mass. 398, 403. Compare *Thibault* v. *DeVio,* 318 Mass. 605, 606–607, and cases cited.

We think that the verdict of $4,580 for the plaintiff ought not to stand as to either count. The evidence did not support a verdict for the plaintiff on count 1 or warrant a verdict for the plaintiff on count 2 for more than nominal damages. While the defendant failed to move for a directed verdict on count 1 (see Rule 71 of the Superior Court [1954]), and to request an appropriate instruction as to count 2, the judge had on his own motion the power and duty to make such rulings as the law required. *Field* v. *Hamm,* 254 Mass. 268, 271. The instructions to which the defendant excepted did not accurately present to the jury the issues which they properly could consider. As a consequence the verdict returned was one not warranted by the evidence on either count. The defendant's exception to the charge raises the same issues which ordinarily would be presented by motion and request. We think that there should be a new trial. It is unnecessary to discuss the exceptions to the rulings on evidence as they relate to a situation which is unlikely to reoccur.

*Exceptions sustained.*