ALAN J. ANISGARD *vs.* DANA S. BRAY & others.[1]

Suffolk.  November 7, 1980. — April 22, 1981.

Present: HALE, C.J., ROSE, & KASS, JJ.

*Contract,* Implied, Damages, What constitutes.  *Damages,* Contract.
     *Practice, Civil,* Relief from judgment.

In an action for breach of contract, evidence that the plaintiff, a tennis
     professional, spent considerable time and money developing his idea for
     the construction and operation of a tennis facility, that he disclosed his
     idea and the value of the services he had performed to the defendants
     with the expectation that he would be compensated for them, and that
     the defendants represented to the plaintiff that they intended to compen-
     sate him if they used his idea and services, although the precise form and
     amount of compensation were never agreed upon, warranted findings
     that there was an implied contract which the defendants had breached
     when they failed so to compensate the plaintiff and that the plaintiff was
     entitled to recover the reasonable value of his services.  [729-731]
Although a plaintiff in a civil action acted inexcusably and reprehensibly
     in presenting further evidence, ex parte and without the knowledge of
     his counsel, to the trial judge by means of a letter sent after the trial
     was concluded but before a decision was rendered, the defendants
     were not entitled to relief from the judgment where the decision in the
     case was prepared and being processed prior to the judge's receipt of
     the letter and the defendants had not been prevented from presenting
     the merits of their case.  [731]

CIVIL ACTION commenced in the Superior Court on De-
cember 9, 1974.

The case was heard by *Fine,* J., on a master's report.

*Warren G. Miller* for the defendants.

*Edgar L. Kelley* for the plaintiff.

ROSE, J.  The defendants appeal from a judgment with
damages in the amount of $35,000 entered in favor of the

---

[1] William L. Feeley and Tamarack Tennis Associates.

plaintiff. In his complaint, the plaintiff alleged that the defendants had breached their contract with him to share in the profits and employ him as the manager of a tennis facility to be constructed in Pittsfield in exchange for the use of the plaintiff's idea and preparation for the construction of the facility. Refusing to follow the master's conclusions of law, the judge found that the parties had formed an oral partnership agreement and that the defendants broke that agreement when they formed a limited partnership, in which they were the only general partners, to construct the tennis facility and share in its profits. Finding that there was insufficient evidence of the value of the plaintiff's contribution to the partnership, the judge awarded damages under the contract theory of recovery espoused in *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 624-626 (1964). We affirm the judge's award.

The facts, as found by the master, may be summarized as follows: In 1972, or 1973, the plaintiff, a tennis professional, conceived an idea for the development of a tennis facility in the Berkshires. During 1973, and part of 1974, he spent considerable time and money developing this idea. Prior to his meeting the defendant Feeley on February 28, 1974, the plaintiff had located a suitable site for the facility, negotiated a proposed long-term lease with the owner of the property, obtained a feasibility study and preliminary architectural drawings, found a suitable builder, and had fruitful discussions with a Pittsfield bank concerning financing the project. The judge found that in connection with these efforts, the plaintiff incurred expenses in the amount of $10,000 and spent time worth $25,000.

After attempting without success to establish the facility in association with others, the plaintiff met the defendant Feeley on February 28, 1974, in the latter's Boston office. The plaintiff described his background as an experienced tennis instructor and disclosed to Feeley his ideas concerning the establishment of the tennis facility. The plaintiff described the work he had performed in developing the site and the expenses he had incurred. He disclosed the identity

of the property owner with whom he had been negotiating a long-term lease and the name of the bank with which he had negotiated for financing. The plaintiff also provided Feeley with a copy of the feasibility study for the tennis facility.

On March 6, 1974, the plaintiff introduced Feeley to the owner of the proposed site and on March 7, 1974, Feeley introduced the plaintiff to Bray, a wealthy investor who frequently participated in real estate developments of various descriptions. Bray told Anisgard that Feeley was authorized to determine whether the idea was a desirable venture and if so, Feeley and Bray would obtain the necessary financing and Anisgard would participate as the manager and part owner of the enterprise.

By mid-April, Feeley had determined that the facility was a desirable project and he, Bray, and Anisgard met to discuss the financial interest each would have in the enterprise. Feeley prepared a written memorandum setting forth the terms of the parties' agreement and submitted it to the plaintiff. The plaintiff accepted those terms which conformed with the parties' earlier discussions. The memorandum also included, however, additional terms not previously discussed, relative to financing the project in the event that existing arrangements for financing failed to materialize. The plaintiff sought clarification of the additional terms before executing the document. He received no response and never executed the document. Sometime in early June, 1974, Feeley and Bray decided to proceed with the development of the facility in partnership with each other and to exclude the plaintiff from any participation in the project. To this end, the defendants formed on August 1, 1974, a limited partnership known as Tamarack Tennis Associates, the name the plaintiff had proposed for the facility. Although the plaintiff contacted both defendants at various times throughout the summer of 1974, they did not disclose to the plaintiff that they had excluded him from participation in the project until September 3, 1974.

Construction of the facility was commenced in early August, 1974, and was completed by December, 1974.

After forming the limited partnership, the defendants obtained a long-term lease of the same site the plaintiff had suggested and for which the plaintiff had provided a feasibility study. The terms of the lease were the same as those negotiated by the plaintiff. The defendants obtained financing for the construction of the facility from the same bank with which the plaintiff had negotiated. The judge found that the "[p]laintiff provided the idea for the project and performed substantial work of value to the project . . . ." She also found: "The plaintiff's idea and the result of his work were utilized by [the] defendants in carrying out the project."[2]

We are of the opinion that, under these facts, the defendants are liable under an implied-in-fact contract. That the plaintiff expected to be paid for the work he performed and the idea he disclosed to the defendants is not sufficient of itself to establish the existence of a contract. *Day* v. *Caton*, 119 Mass. 513, 515 (1876). It must be shown that the defendants expressly or impliedly assented to pay for the plaintiff's services and expenses. If a party "voluntarily accepts and avails himself of valuable services rendered for his benefit, when he has the option whether to accept or reject them, even if there is no distinct proof that they were rendered by his authority or request, a promise to pay for them may be inferred." *Id.* at 515. See *Burton* v. *Burton Stock Car Co.*, 171 Mass. 437, 440 (1898); *Baltimore & Ohio R.R.* v. *United States*, 261 U.S. 592, 597 (1923). In the instant case, the plaintiff expected to be paid; he disclosed his idea and informed the defendants of the value of his services with the understanding that if his idea and work were used, he would be compensated. The defendants contend that since the plaintiff performed all of his services before he met

---

[2] The parties were granted leave to introduce further evidence on which the judge was to make findings of fact with respect to two of the master's factual findings. The parties stipulated to the finality of the balance of the master's findings.

the defendants, he cannot recover because only a past consideration was shown. That argument fails because the tendered consideration was the conveyance of the development package which the defendants accepted through their conduct. As the plaintiff's performance and promise were contemporaneous, the facts show present consideration. See *Gellert* v. *Dick*, 277 N.Y. 123, 125 (1938).

After the defendants examined the concept and determined that it was a desirable venture, they expressed interest in it and on three separate occasions the parties discussed the form and amount of the plaintiff's compensation. Although the parties never agreed to the precise form or amount of compensation to the plaintiff in the event that his idea and work were used, the defendants impliedly assented to pay the plaintiff. The defendants were free to reject the plaintiff's idea and work when it was tendered to them or at any time before implementing the idea. Once they represented to the plaintiff that they intended to pay him if they used his idea and services, they were bound to do so when they proceeded to use those ideas and services. "Although the agreement at its inception is unilateral, upon acceptance it becomes binding upon both parties." *Greaney* v. *McCormick*, 273 Mass. 250, 253 (1930). See *Hobbs* v. *Massasoit Whip Co.*, 158 Mass. 194, 197 (1893). In the absence of an express agreement, an implied contract "may be found to exist from the conduct and relations of the parties." *LiDonni* v. *Hart*, 355 Mass. 580, 583 (1969). See also *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952); *Air Technology Corp.* v. *General Elec. Co.*, 347 Mass. 613, 625 (1964); 1 Corbin, Contracts § 71 (1963); 1 Williston, Contracts § 3 (3d ed. 1957).

The defendants get no help from their argument that there is no contract because there was not agreement about the value of Anisgard's idea and work. "Where services are performed for another or other benefits are received by him with his knowledge, and there is no evidence that such benefits were conferred gratuitously, the law implies a promise to pay for their reasonable value." *Evers* v. *Gilfoil*, 247

Mass. 219, 223 (1924). The measure of damages in these circumstances is the reasonable value of the plaintiff's services. See *Eno* v. *Prime Mfg. Co.*, 314 Mass. 686, 690-691 (1943); *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1979). There is ample evidence in the record to support the judge's finding of $35,000 as the reasonable value of Anisgard's services. Accordingly, we affirm the judge's award of damages.

There remains a final issue which demands our attention. After the trial was concluded, but before a decision was rendered, the plaintiff, ex parte, without the knowledge of his counsel presented further evidence by means of a letter to the trial judge. Ordinarily such inexcusable and reprehensible conduct would justify relieving the defendant from the judgment. See Mass.R.Civ.P. Rule 60(b)(3), 365 Mass. 828 (1974). However, we believe that such relief would be unnecessarily harsh, particularly where Feeley and Bray were not "prevented from presenting the merits of [their] case." *Jennings* v. *Hicklin*, 587 F.2d 946, 948 (8th Cir. 1978). In reaching this conclusion, we take note that when the trial judge denied the defendants' motion for relief from judgment under Mass.R.Civ.P. 60(b)(3), she stated that her "decision in this case was prepared and being processed prior to [her] receipt of Mr. Anisgard's letter." In the circumstances, while we sharply condemn the plaintiff's action, after careful consideration we have concluded that the defendants' motion for relief from judgment was properly denied.

*Judgment affirmed.*