Black, P.J.
This is an action brought on February 1, 1984 by the plaintiff, Arthur M. Tosti (“Tosti”), to recover amounts alleged to be due as a result of his contacting, discussing costs, and producing to the defendant Pro-Tection, Inc. (“Pro-Tection”) a person who eventually purchased a franchise of ProTection’s fabric protectant business. The complaint, as amended, was brought in three counts. The first alleged breach of an express contract, the second was for unjust enrichment and the third count alleged a violation of G.L. c. 93A. The defendant’s answer essentially denied the allegations set forth in the plaintiffs complaint.
The case was tried on December 16, 1985. There was evidence tending to *133 show the following:
In early March 1983, Tosti contacted Pro-Tection, seeking to sell the defendant’s franchises on a commission basis. Tosti had had ten years experience selling franchises for two other companies, namely Chem-Dry and Rug Doctor, both being in the fabric cleaning business. Pro-Tection was a corporation engaged in the sale of fabric protectant services and goods, and franchised its business. Thomas Gilmore, president of Pro-Tection (“Gilmore”) agreed that Tosti could sell Pro-Tection franchises during Tosti’s initial visit to Pro-Tection.
After Tosti’s initial visit to Pro-Tection, during which he discussed with Gilmore his franchise-selling experience and his desire to sell Pro-Tection franchises, he met Gilmore, by prior arrangement, in Rhode Island to witness Gilmore’s sale of Pro-Tection’s services and goods. Tosti knew someone who might be interested in purchasing a franchise of this nature, a Mr. Bud Webber (“Webber”), whom he had known for some years. Tosti, with Gilmore’s consent, arranged for Webber to attend this sale. Webber and Tosti attended Gilmore’s sale to the Rhode Island customer. After this sale there were discussions among Gilmore, Tosti, Webber and Webber’s wife concerning Pro-Tection franchises.
Over the next few days, Tosti met Pro-Tection employees, read Pro-Tection literature, and attended training sessions for sellers of Pro-Tection’s goods and services. Gilmore had provided Tosti with names of approximately one hundred persons who might be interested in buying Pro-Tection franchises and during the second week of March, Tosti made phone calls to some of these individuals. At this time, Gilmore stated that Tosti would receive a 10% commission for selling franchises.
At one point after mid-March, Tosti approached Gilmore with a proposal that Tosti receive a 10% commission on sales of franchises where leads were provided by Pro-Tection, and a 15% commission on sales of franchises where Tosti found and closed the sale.
Tosti testified that Gilmore agreed to a 15% commission on the Webber deal, and also testified that he informed Gilmore of two other possible sales on which he wanted a 15% commission if a sale occurred, and that Gilmore agreed to this arrangement.
Tosti informed Gilmore of Webber’s interest in buying the franchise, and Gilmore told Tosti to have Webber come to Pro-Tection’s office to discuss the matter. At about this time, Tosti asked Gilmore to assume negotiations because of his lack of experience in the field. Also, the exact geographical limits of Webber’s franchise and the purchase price were yet to be determined. Tosti testified that Gilmore agreed that Pro-Tection would pay him a 15% commission notwithstanding that Gilmore took over negotiations at this point.
Webber eventually purchased the Seattle Pro-Tection franchise for $40,000.00.
Tosti testified that he demanded immediate payment of a 15%. commission on this sale, equal to $6,000.00. He testified that Gilmore asked for ninety days to pay, but that Tosti insisted on payment immediately.
At this point, Tosti ceased any work for Pro-Tection, and his only contact with Pro-Tection thereafter by telephone demanding payment, and a certified letter to Pro-Tection, returned undelivered. Tosti had not been paid anything in relation to the Webber sale.
At the close of the trial, the defendant made the following requests for *134 rulings, and the Court acted on them as follows:
1. There is insufficient evidence for a finding in favor of plaintiff.
Ruling: Denied: inasmuch as I find that there was a contract implied by Law which arose because the Defendant was unjustly enriched as a consequence and by reason of efforts of the Plaintiff.
2. There is sufficient evidence for a finding in favor of defendant.
Ruling: Allowed.
3. Recovery under a theory of quantum meruit of (sic) implied-in-fact contract [is not justified] based upon actions of the plaintiff taken and in anticipation of a contract or business transaction. Leow v. Denaro, 362 Mass. 853, 863 (1972) (sic); Anisgard v. Bray, Mass. App. Ct. Adv. Sh. (1981) 826, 830.[1]
Ruling: Allowed: but inapplicable to facts found inasmuch as I find that the actions of the Plaintiff were not gratuitous.
The plaintiff also submitted two requests for rulings of law, both which were deemed as having been waived in light of the court’s finding in favor of the plaintiff under the second count of the amended complaint.
The defendant claims to be aggrieved by the judge’s ruling on the request number 1, in that it contends that there was insufficient evidence to support an award of $5,000 to the plaintiff on a theory of implied-in-law contract/unjust enrichment.
It appears that the judge found for the defendant on the contract issue due to the fact that the plaintiff failed to fulfill a condition of the contract. The court did find, however, that there was a contract implied by law. A quasi contract or a contract implied by law differs from one which is implied by fact (or an express contract). The Supreme Judicial Court defined a quasi contract in Salamon v. Terra, 394 Mass. 857, 859 (1985), a case in which that court affirmed the Southern Appellate Division’s reversal of a trial court’s decision granting quantum meruit damages, stating:
A quasi contract or a contract implied in law is an obligation created by law ‘for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.... [C] considerations of equity and morality play a large part. . . in constructing a quasi contract_’ 1 A. CORBIN, CONTRACTS, § 19 (1963). It ‘is not really a contract, but a legal obligation closely akin to a duty to make restitution.’ Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C. Cir. 1973). ‘A person who has been unjustly enriched at the expense of another is required to make restitution to the other.’ RESTATEMENT OF RESTITUTIONS 1 (1937). The underlying basis for awarding quantum meruit damages in a quasi contract case is unjust enrichment of one party and unjust detriment to the other party. See U.S. Controls Corp. v. Windle, 509 F.2d 909, 912 (7th Cir. 1975); 1 A. CORBIN, CONTRACTS § 19A (Kaufman Supp. 1984). The Appellate Division stated the rule as follows: “the injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone’s reasonable expectations.” See 1 A. CORBIN, CONTRACTS, supra.
In Salamon, the plaintiff and defendant had entered into a contract for the purchase of certain parcels of real estate. The plaintiff was to build houses on lots, then sell them to third parties. The plaintiff partially completed building *135 the houses, but due to unfavorable economic conditions, was unable to obtain financing and could not pay for the lots. The defendant was at all times ready, willing and able to complete the sale. The plaintiff sued under a theory of quasi contract for the two partially completed homes which the defendant would retain. The trial judge, while finding that there was no express or implied contract for the homes, found that there was a contract implied by law. The Supreme Judicial Court upheld the Appellate Division’s reversal of the trial court’s decision, stating that there was no evidence to support the conclusion that either party could have reasonably expected that the defendant would pay for the houses. The court stated that the defendant did not request or desire that the houses be built. Salomon, supra, at 860. The plaintiff did not act gratuitously, but both parties expected that some third party would pay for them.
In this case, the defendant should have realized that had the plaintiff completed the contract, it would have owed the plaintiff the agreed upon commission as a matter of right. The plaintiff obviously suffered a detriment, in using his time, effort, experience and contacts in procuring a buyer for the franchise, while the defendant reaped all the benefits of his labors. Clearly, the plaintiff did not act gratuitously in finding a buyer, and reasonably expected to be paid. It would be unjust to allow the defendant to benefit from the plaintiffs efforts without the plaintiff receiving appropriate compensation.
The only question that remains, is whether there was sufficient evidence in this case to support the measure of damages awarded by the trial judge. The defendant claims that the judge’s compromise between the 10% commission originally offered and the 15% commission promised if he completed the Webber deal was an incorrect measure of the fair value of the plaintiff services.
The measure of damages under the doctrine of unjust enrichment is the value of the actual benefit realized and retained. 66 AM. JUR.2d Restitution and Implied Contracts § 28. “If there is no special agreement as to the amount of compensation and the services are not intended to be gratuitous, the law implies a promise by the employer to pay what services reasonably are worth, which is determined largely by the nature of the work and the customary rate of pay for such work in the community and at the time the work was performed.” Id. The party is entitled to recover the fair value of his services. Boston Athletic Association v. International Marathons, Inc., 392 Mass. 356, 368 (1984); Hurwitz v. Parkway Country Club, Inc., 343 Mass. 661, 665 (1962); Driscoll v. Bunar, 328 Mass. 398, 403 (1952). There are many factors to consider in determining what the fair value of the compensation, such as the person’s expertise in the area, the time spent, the importance of the matter involved, and prices charged for similar services. Boston Athletic Association, supra, at 368. Absent a showing that the defendant promised to pay a certain amount or what would be a fair and reasonable charge, the plaintiff would only be entitled to nominal damages. Driscoll, supra, at 403. Any person who' is qualified may testify as to the value of the services rendered, including the plaintiff.
In Hurwitz, supra, the plaintiff, after conversations with the owners of a country club, began negotiations to have a championship golf tournament held at the country club. No price for the plaintiffs efforts was ever set. The Supreme Judicial Court stated that while there was no evidence of an express contract, the plaintiff would be able to recover the fair value of his services. There was no offer of any evidence as to what the value of those services would be or if they were of a special nature. Therefore, the plaintiff was only entitled to nominal damages. Hurwitz, supra, at 665-666.
*136 In the case at bar, it is clear that the plaintiff presented sufficient evidence as to the value of his services. The agreement between the parties failed to be an enforceable contract due to the fact that the plaintiff never completed the sale of the franchise. Nevertheless the agreement is sufficient to show a special agreement between the parties and could be used as a basis to determine the fair amount of compensation due to the plaintiff. Since the plaintiff testified that the defendant agreed to pay 10% for any buyers from Pro-Tection’s list ($4,000.00) and 15% for any new customers ($6,000.00), the courts judgment for $5,000.00 is clearly supported by the evidence.
We find no error in the trial judge’s findings or rulings of law. Accordingly, the report is dismissed.

 The proper citations are Leow v. Denaro, 362 Mass. 863 (1972); Anisgard v.Bray, 11 Mass. App. Ct. 726 (1981).