Geza J. JAKO, M.D.,
Plaintiff, Appellant,

v.

PILLING COMPANY,
Defendant, Appellee.

No. 87–1950.

United States Court of Appeals,
First Circuit.

Heard April 7, 1988.

Decided June 8, 1988.

Damon Scarano, Boston, Mass., for plaintiff, appellant.

Philip H. Lebowitz with whom Joseph J. Serritella, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Paul R. DeRensis, Deutsch Williams Brooks DeRensis Holland & Drachman, P.C., Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Appellant Geza Jako is a physician and professor of otolaryngology. Beginning in 1963 Dr. Jako entered into an informal collaboration relationship with appellee Pilling Company, a manufacturer of specialized medical equipment. Dr. Jako made several recommendations regarding the design of equipment used in microsurgery of the larynx, mainly laryngoscopes. Pilling had manufactured laryngoscopes prior to 1963, but from 1963 to the mid-to-late 1970's, most of Pilling's laryngoscopes, as well as other instruments used in the course of larynx-microsurgery, were developed substantially according to the suggestions of Dr. Jako. Following industry practice, the instruments bore the name of the physician who suggested the modification, in this instance, *e.g.*, the "Jako laryngoscope."[1]

Dr. Jako does not hold, nor has he ever held, a patent on any of the instruments developed as a result of his ideas. Dr. Jako never sought compensation for his services before 1984.[2] Indeed, Pilling has never compensated persons for the use of their names or ideas in relation to product development unless the idea has been patented.

Dr. Jako has repeatedly stated that when he entered into the relationship with Pilling he believed it inappropriate for physicians to receive any money for their ideas. How-

---

1. Pilling's 1986 catalog includes a section on Jako Micro–Laryngoscopes, Jako–Kleinsasser micro-laryngeal instruments, and Jako laser instruments.

2. There was, however, a suggestion of a request for compensation early on in Dr. Jako's conversations with Pilling representatives: he suggest-

ed it would be fair to give him a laryngoscope for every fifty sold. That attempt was not pursued and resulted in no agreement or arrangement of any kind. Pilling did pay for travel expenses when Dr. Jako was asked to contribute in sales promotions and like activities.

ever, after several years with little or no contact between the parties, Dr. Jako sent Pilling a demand letter in December 1984. The letter demanded a one percent royalty payment for all products bearing his name sold within the prior fifteen years, and a three percent royalty payment on all future sales of similar products.

Initially, Pilling officials responded positively, meeting with Dr. Jako to negotiate some agreement. Even though it was clear from the start that they would not compensate Dr. Jako for prior sales, they agreed to negotiate compensation for future sales. In an April 1985 meeting, after making some progress toward an agreement, Pilling officials gave Dr. Jako $5,000 as a show of good faith. The check had written on its face "Advance on Future Arrangements." An agreement never materialized. After two meetings and nine months of negotiating, Pilling announced it was not going to consider the matter any further.

Dr. Jako then filed a complaint alleging seven causes of action: count 1, breach of contract; count 2, restitution, unjust enrichment; count 3, tort of civil conspiracy; count 4, malicious interference with a contractual right; count 5, bad faith termination of an employment contract; count 6, violation of Mass.Gen.Laws Ann. ch. 12, §§ 11H, 11I; count 7, intentional infliction of emotional distress. The complaint sought as remedies both monetary damages and injunctive relief. In May, 1987, both sides stipulated to the dismissal of counts three through seven, with prejudice.[3] Pilling then moved for summary judgment as to counts one and two. The court granted the motion. 670 F.Supp. 1074 (1987).

■ The court found there was no evidence of an express contract between the parties prior to 1984. Furthermore, the court correctly held that there was no contract implied in fact. The conduct of the parties and the relationship between them showed no basis to find a contract implied

in fact. *See LiDonni, Inc. v. Hart,* 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969). Dr. Jako conceded he had not expected compensation prior to 1984, so he could not allege that he had a reasonable expectation that he would receive compensation for the use of either his name or ideas during that period. *See Anisgard v. Bray,* 11 Mass. App. 726, 419 N.E.2d 315 (1981).

■ As to count two, claiming unjust enrichment, the court similarly found the record silent on Dr. Jako's reasonable expectation that he would be paid (citing *Salamon v. Terra,* 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (1985)). Examining the equities of this situation, we also agree that Dr. Jako is not entitled to any restitution. When Dr. Jako entered into this relationship, he sought only to benefit mankind by improving medical equipment. This he achieved. He also received the benefit of a very successful career promoted, in part, by the name recognition that resulted from the relationship. In effect, the relationship benefited both parties, so Pilling was not unfairly enriched.

The district court also found that Dr. Jako was not entitled to any injunctive relief from Pilling's future use of his name because the surname "Jako" has acquired a secondary meaning. Even though the district court discussed whether injunctive relief was appropriate, we find that the issue is not before us because Dr. Jako waived that issue. After the denial of the motion under Fed.R.Civ.P. 65 and the voluntary dismissal of counts three through seven, the only remaining causes of action sounded in breach of contract and restitution. The only remedy sought in this appeal is damages. We do not examine, therefore, his claim for injunctive relief.

■ The last issue is the court's granting summary judgment on Pilling's counterclaim for the $5,000 advanced to Dr. Jako. The letter that accompanied the check stated: "This represents payment in advance of concluding our proposed agree-

---

3. The court had already denied motions for a temporary restraining order and a preliminary injunction on December 4, 1986.

ment governing our relationship in the future." The court found that "[t]he notation on the stub itself, as well as the language of the accompanying letter of April 17, 1985, is unambiguous in qualifying the payment as an advance contingent on a successful resolution of the contract negotiation." Thus the court concluded that Dr. Jako had to return the "advance" to restore the parties to their original positions. The court cited *Doubleday & Co., Inc. v. Curtis,* 599 F.Supp. 779, 783 (S.D.N.Y. 1984), which involved a written publishing contract with specific performance and time-of-the-essence provisions, ruled by New York law. That holding in *Curtis* was reversed by the Second Circuit in *Doubleday & Co., Inc. v. Curtis,* 763 F.2d 495, 502–03, *cert. dismissed,* 474 U.S. 912, 106 S.Ct. 282, 88 L.Ed.2d 247 (1985), based on procedural and substantive grounds. We fail to see how *Curtis* disposes of the issue of a transfer of money called "advance" by the parties, where the time frame, the performance expected of the parties, and the other possible contingencies upon which the "advance" could have been conditioned, were not addressed by the parties. The advance could be construed as a gift, to show good faith on Pilling's part; or as Pilling's part in a contract in which Dr. Jako agreed to withhold any further action while the contract was negotiated; or as an actual advance, conditioned on good faith negotiations, or on completion of an agreement within a reasonable time. In short, a factual issue remains, and the court's disposition of Pilling's counterclaim through summary judgment was inappropriate.

We cannot avoid noting the grossly inadequate record developed in the proceedings below. Rules 17 and 18 of the Local Rules of the United States District Court for the District of Massachusetts require from the moving and opposing parties not only statements of allegedly undisputed and disputed material facts, but also memoranda of reasons, including citation of supporting authorities. Lacking both a statement of facts in dispute and a memorandum of reasons from plaintiff, and lacking transcripts of the arguments on the motion, we are forced to act partially in the blind. We

emphasize that to foster fairness in the court of first instance and in the appellate process, the articulation of legal reasons is fundamental. The district court therefore should have required the parties to comply with the rules.

To conclude, we affirm the court's granting of summary judgment as to counts one and two. We vacate as moot the court's analysis of injunctive relief. We reverse the court's decision as to Pilling's counterclaim for $5,000.

*Affirmed in part, vacated in part, reversed in part, and remanded for further proceedings in accordance with this opinion.*