FRASER AND WISE, P.C., Plaintiff,

v.

PRIMARILY PRIMATES,
INC., Defendant.

Civ.A.No. 94–10097–RCL.

United States District Court,
D. Massachusetts.

May 31, 1996.

Order Accepting Report and Recommendation on Reconsideration Aug. 9, 1996.

---

## ORDER

LINDSAY, District Judge.

Recommendation *Accepted.* Objections filed by the plaintiff have not been considered because they were not timely filed.

## ORDER ON RECONSIDERATION

Motion for Reconsideration is *allowed.* On reconsideration, the Court *accepts* the Report and Recommendation for the Magistrate Judge on the merits.

**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COURTS I (BREACH OF CONTRACT), II (ACCOUNT ANNEXED), III (WORK), AND V (QUANTUM MERUIT) (DOCKET ENTRY #72)**

**ORDER RE: PLAINTIFF'S MOTION FOR AN ORDER THAT NO MATERIAL FACTS ARE IN DISPUTE WITH REGARD TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY #97); PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO SUMMARY JUDGMENT BY AFFIDAVIT OF WALLACE SWETT (DOCKET ENTRY #86); PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF CHARITY DOBBINS, ESQUIRE (DOCKET ENTRY #88); PLAINTIFF'S MOTION TO STRIKE THE (REPLACEMENT) AFFIDAVIT OF CHARITY DOBBINS, ESQ. (DOCKET ENTRY #95); PLAINTIFF'S MOTION FOR SANCTIONS (DOCKET ENTRY #109); PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR LEAVE OF COURT TO FILE THE REPLACEMENT AFFIDAVIT OF CHARITY DOBBINS (DOCKET ENTRY #104)**

### May 9, 1996.

BOWLER, United States Magistrate Judge.

Pending before this court are the above styled motions. (Docket Entry # # 72, 86, 88, 95, 97, 104 & 109). After conducting a hearing (Docket Entry # 113), this court took the motions (Docket Entry # # 72, 86, 88, 95, 97, 104 & 109) under advisement.

### PROCEDURAL BACKGROUND AND MOTIONS TO STRIKE

Plaintiff Fraser and Wise, P.C. ("Fraser & Wise"), a Massachusetts professional corporation organized for the purpose of practicing law, filed this action in December 1993 to collect payment on legal bills incurred in the course of representing defendant Primarily Primates, Inc. ("PPI"), a nonprofit Texas corporation. The complaint seeks recovery on the basis of breach of contract (Count I), fraud (Count IV) and quantum meruit (Count V). Fraser & Wise additionally brings counts entitled "Account Annexed" (Count II) and "Work" (Count III).

In September 1993, prior to the filing of the present lawsuit, PPI instituted a lawsuit in Texas against Attorney Steven Wise ("Attorney Wise"), a Massachusetts attorney and the President of Fraser & Wise, and Melissa J. Karron ("Karron") and Kay McMichael-Trevino ("Trevino"), both described in the amended complaint as volunteer workers at PPI. The amended complaint recited certain conduct on the part of Attorney Wise in the summer of 1993 in connection with a letter sent to Wallace Swett ("Swett"), identified as Trustee of PPI, on behalf of Karron and Trevino. The letter notified Swett of his suspension as a trustee and employee of PPI. The amended complaint additionally cited to Attorney Wise's violation of professional standards of conduct. (Docket Entry # 90, Ex. 2(D)).

The district judge in the Texas case accepted the recommendations of the magistrate judge to allow the defendants' motion for summary judgment. (Docket Entry # 96). On summary judgment, the magistrate judge characterized Swett's belief that Attorney Wise violated the attorney client privilege by turning over documents to animal rights organizations as speculative. The magistrate judge additionally concluded that

PPI failed to refute the defendants' evidence that PPI suffered no damages. (Docket Entry # 90, Ex. 2(C)). In a separate order striking summary judgment evidence, the magistrate judge found that Swett's affidavit, which is not part of the present summary judgment record, lacked personal knowledge that PPI had incurred legal fees in excess of $50,000.[1] (Docket Entry # 90, 2(A)).

In the present case, Fraser & Wise moves for summary judgment on all counts except for the fraud count, Count IV. (Docket Entry # 72). It maintains that there are no material facts in dispute with respect to the existence of a contract between Fraser & Wise and PPI for the rendering of legal services. To support summary judgment, Fraser & Wise maintains that PPI and Swett, President of PPI, stipulated that there was no evidence that the time billed was unauthorized, not expended or not incurred. Fraser & Wise therefore argues it is entitled to receive an accumulated amount of $59,079.95 in attorney's fees together with interest and the costs of collection. Fraser & Wise additionally asserts that, absent an express contract, it should recover $92,500 in fees together with expenses and costs.

In addition to seeking summary judgment, Fraser & Wise moves to strike an affidavit authored by Charity Dobbins, Esquire ("Attorney Dobbins"), a legal cost specialist with Legalguard, Inc. ("Legalguard"), a legal cost management and accounting firm retained by PPI to assess the reasonableness of Fraser & Wise's billings. (Docket Entry # 88). Fraser & Wise further moves to strike a replacement affidavit wherein PPI seeks to cure any deficiencies in Attorney Dobbins' initial affidavit. (Docket Entry # 95).

■ Fraser & Wise contends that the initial affidavit: (1) is unsworn; (2) does not indicate that Attorney Dobbins has personal knowledge; (3) does not recite that the facts are true and correct; (4) fails to establish Attorney Dobbins' expert qualifications; (5) violates Rule 26(a)(2)(B), Fed. R. Civ. P.;[2] and (6) is contingent on the need for further information. (Docket Entry # 89). Because the summary judgment record depends, in part, on the merits of the motion to strike Attorney Dobbins' affidavit (Docket Entry # 88), this court initially addresses the above arguments.

■ The first sentence of the affidavit reads that Attorney Dobbins "upon her oath, deposes and says...." The recitation "upon oath" adequately complies with Rule 56(e), Fed.R.Civ.P.

---

1. PPI attempts to use the conduct occurring in July 1993 as a defense to recovery under Count V for quantum meruit. In response, Fraser & Wise seek to use the findings in the Texas case to collaterally estop PPI from litigating these issues in the present lawsuit. Due to this court's resolution of Count V, it is not necessary to address the collateral estoppel issue in order to recommend denial of summary judgment.

2. Rule 26(a)(2)(B) ("Rule 26(a)(2)(B)"), Fed. R.Civ.P., concerns the mandated or court ordered disclosure of expert reports. This court ordered Fraser & Wise and PPI to designate experts respectively on August 15, 1994, and September 2, 1994, and for the parties to complete expert depositions on or before November 1, 1994. Upon motion, on November 14, 1994, this court allowed an extension of time to designate expert witnesses.

Fraser & Wise's two sentence argument to strike the affidavit under Rule 26(a)(2)(B) asserts that Attorney Dobbins' opinion fails "to show that it was 'prepared and signed by the witness.'" It also purportedly fails "to give 'the qualifications of the witness.'" (Docket Entry # 89). Rule 26(a)(2)(B) dictates that disclosure of experts "shall ... be accompanied by a written report prepared and signed by the witness." The rule also requires, as correctly quoted by Fraser & Wise, that the expert report must contain "the qualifications of the witness." Rule 26(a)(2)(B), Fed.R.Civ.P.

The affidavit authored by Attorney Dobbins in opposition to the summary judgment motion, however, does not purport to be the report of an expert disclosed in accordance with Rule 26(a)(2)(B). To the extent PPI made a disclosure of an expert report by Attorney Dobbins under Rule 26(a)(2)(B), the content of that disclosure is not before this court. PPI submitted Attorney Dobbins' affidavit in opposition to summary judgment as opposed to in compliance with this court's order regarding the sequence of expert disclosures under Rule 26(a)(2).

Accordingly, Rule 26(a)(2)(B) does not provide Fraser & Wise with a basis to strike the affidavit. To the extent PPI has not complied with the expert disclosure mandated by Rule 26(a)(2)(B) and this court, Fraser & Wise should file a separate motion and more fully explain the manner in which PPI's conduct violated Rule 26(a)(2)(B).

Turning to the second argument, it is well established that an affiant must have personal knowledge of the recited facts. Rule 56(e), Fed.R.Civ.P., mandates that "opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A nonmovant cannot expect this court to give weight to averments made without personal knowledge "or those which are in a form patently inadmissible at trial." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990).

The affidavit in question does not affirmatively recite that the affiant, Attorney Dobbins, has personal knowledge. Rather, Attorney Dobbins avers that she is a Legal Cost Specialist with Legalguard, Inc., attests to the experience of firm members and attaches a report detailing Legalguard's review of Fraser & Wise's billings. The cover page of the report reflects that Attorney Dobbins, together with a legal cost analyst, conducted the review of Fraser & Wise's legal bills. (Docket Entry # 83, Ex. A).

■ Such an affidavit might satisfy the personal knowledge requirement. *See Jefferson Construction Company v. United States*, 283 F.2d 265, 267 (1st Cir.1960) (dicta noting that, "We might be prepared to say that the affidavit of a president of a corporation that the books and records of the company show certain facts to be" satisfies requirement), *cert. denied*, 365 U.S. 835, 81 S.Ct. 748, 5 L.Ed.2d 744 (1961). Nevertheless, because this court considers Attorney Dobbins only as an expert testifying about the fair and reasonable value of the services rendered by Fraser & Wise under the quantum meruit count, it is not necessary to address the personal knowledge requirement. To the extent an affiant is a qualified expert, her testimony need not be based on personal knowledge. F.R.E. 602 & 703. In addition and as more fully explained below, to the extent Attorney Dobbins failed to state that the report and the underlying facts and opinions therein were true, a nonmovant is generally entitled to have its disputed statements accepted as true. *See Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.1994).

■ Fraser & Wise additionally argues that Attorney Dobbins' affidavit fails to show that she qualifies as an expert based on her knowledge, training and education as required by Rule 702, F.R.E. " '[A]n individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise.' " *Sylla–Sawdon v. Uniroyal Goodrich Tire Company*, 47 F.3d 277, 283 (8th Cir.) (citation omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995). In the case at bar, it is evident that Attorney Dobbins is an attorney employed at a firm devoted to managing legal costs and auditing legal billing. While she may not be qualified to render an opinion on every subject of the law, *see Whiting v. Boston Edison Company*, 891 F.Supp. 12, 24 (D.Mass.1995), she nevertheless has a certain amount of expertise in the area of attorney billing by virtue of her employment. In the discretion of this court, therefore, she has sufficient knowledge through experience and education to qualify as an expert. *See, e.g., Payton v. Abbott Laboratories*, 780 F.2d 147, 155–156 (1st Cir.1985). Once this threshold issue is determined, the factual underpinnings of an expert's opinion, *Payton v. Abbott Laboratories*, 780 F.2d at 156, and "challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." *Sylla–Sawdon v. Uniroyal Goodrich Tire Company*, 47 F.3d at 283.

Next, Fraser & Wise makes an abbreviated statement that Attorney Dobbins' opinion "was in gross violation of FRCP 26(A)(2)(B)(sic) for two reasons. (1) It failed to show that it was 'prepared and signed by the witness,' (2) It failed utterly to give 'the qualifications of the witness.' " (Docket Entry # 89). As explained in footnote number two, Fraser & Wise fails to describe the content of PPI's mandatory disclosure under Rule 26(a)(2)(B). Accordingly, this court is at a loss to evaluate the merits of Fraser & Wise's argument. PPI is cautioned, however, that Rule 26(e), Fed.R.Civ.P., requires a party to supplement or correct any disclosure made under Rule 26(a)(2)(B), "if the

party learns that in some material respect the information disclosed is incomplete or incorrect." Fed.R.Civ.P. 26(e).

■ As a final argument, Fraser & Wise submits that Attorney Dobbins' affidavit is improperly conditioned on the need for further information. (Docket Entry # # 89 & 102). Having reviewed the affidavit, this assertion goes to the weight rather than to the admissibility of the affidavit on summary judgment. The affidavit includes a factual basis and the reasoning process employed. It therefore adequately complies with Rule 56(e), Fed.R.Civ.P., for summary judgment purposes. In light of this court's resolution of the motion to strike (Docket Entry # 88), the motion to strike the replacement affidavit (Docket Entry # 95) is moot.

Next, Fraser & Wise seeks sanctions due to PPI's alleged misrepresentations to the court that: (1) PPI filed a motion for leave to file the replacement affidavit of Attorney Dobbins; and (2) PPI's opposition contained a request for the court to consider the replacement affidavit, if necessary. (Docket Entry # # 109 & 110). Fraser & Wise misinterprets the admittedly confusing statement on the part of PPI that it "has filed for leave of Court to file the replacement affidavit of Charity Dobbins if necessary." (Docket Entry # 100). PPI sought leave to file only "if necessary." Although use of the past tense is confusing in light of the nonexistent motion for leave,[3] the statement is not a misrepresentation. Nor does the statement provide a basis for sanctions.

■ Fraser & Wise also moves to strike the affidavit of Swett who, as previously noted, is President and Trustee of PPI. (Docket Entry # 86). Fraser & Wise argues that Swett's affidavit fails to allege that the facts therein are true. (Docket Entry # 87). Issues of credibility, however, are not a proper subject on summary judgment. Facts and all reasonable inferences therefrom are drawn in favor of the nonmovant. *Barbour v. Dynamics Research Corporation*, 63 F.3d 32, 36 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996);

*Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994). Consequently, when "the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." *Adams v. Metiva*, 31 F.3d at 382. To the extent that factual statements in Swett's affidavit refute Fraser & Wise's evidence, therefore, this court accepts such statements as true albeit solely for purposes of summary judgment. To the extent this court relies on the specific areas in the Swett affidavit identified by Fraser & Wise in the motion to strike, this court will resolve the issue of whether such evidence should be stricken. Otherwise, to the extent this court does not rely on the remaining objectionable statements, the motion is moot.

Fraser & Wise additionally complains that PPI's statement of material facts fails to comply with LR. 56.1. It therefore moves for an order that there are no material facts in dispute. (Docket Entry # 97). Fraser & Wise contends that PPI's opposition pleadings do not contain "a concise statement of the material facts of record ... with page references to affidavits, depositions and other documentation." LR. 56.1; (Docket Entry # 98).

■ Valid local rules "carry the force of law." *Air Line Pilots Association v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir.1994). Nevertheless, the court has "wide latitude" not only in promulgating local rules but also in deciding "how rigorously to enforce them." *Air Line Pilots Association v. Precision Valley Aviation, Inc.*, 26 F.3d at 224. PPI's statement of material facts, submitted through Swett's affidavit, cites to exhibits but not to page numbers. The exhibits, however, are not lengthy and consist of letters, responses to interrogatories and/or excerpts of depositions. While this court would prefer page references to the depositions, submitting relatively small numbers of pages from depositions as exhibits and then citing to the exhibits rather than to the page numbers adequately complies with LR. 56.1. Additionally, LR. 56.1 does not preclude submitting a statement of material facts in the

---

3. Fraser & Wise's motion to strike the nonexistent motion for leave of court to file the replacement affidavit (Docket Entry # 104) is therefore moot.

form of an affidavit. Fraser & Wise's motion for an order that there are no material facts in dispute (Docket Entry # 97) is therefore without merit.

Having determined the content of the summary judgment record for present purposes, this court turns to a summary of the facts. Factual disputes, where applicable, are noted.

The standard for issuance of summary judgment is well established. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Construing the record in the nonmovant's favor, *Velez–Gomez v. SMA Life Assurance Company*, 8 F.3d 873, 875 (1st Cir.1993), an issue is genuine where "there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

 Disputed facts, however, only preclude summary judgment when they are material. "A material issue is one that affects the outcome of the suit, that is, an issue which, perforce, needs to be resolved before the related legal issues can be decided." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d at 581 (internal quotation marks omitted). Further, in assessing the record "[a]t the summary judgment stage, the nonmoving party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in genuine dispute accepted, and all internal conflicts in the evidence resolved favorably to him." *Blanchard v. Peerless Insurance Company*, 958 F.2d 483, 489 (1st Cir.1992) (internal quotation marks and underlining omitted).

4. As the nonmovant, this court resolves this factual dispute in Swett's favor and finds that Attorney Wise was never General Counsel for PPI.

5. Because the existence of a written or oral contract between PPI and Attorney Wise and/or Fraser & Wise is disputed, it is useful to quote the relevant testimony as it appears in the deposition. Swett was questioned as follows:

## FACTUAL BACKGROUND

In March 1991, PPI entered into a client fee agreement with Fraser & Wise for the express purpose of dissolving Primarily Primates, Inc. (Massachusetts) ("PPI–Massachusetts") and transferring its assets to PPI. (Docket Entry # 76, Ex. 1). Wise signed the client fee agreement as President of Fraser & Wise. Swett signed the agreement as Trustee of PPI–Massachusetts. (Docket Entry # 74; Docket Entry # 76, Ex. 1).

The agreed upon fee was $110 an hour with a $1,000 retainer. The client fee agreement guaranteed this hourly rate for a period of one year. The client fee agreement also provided for levying a late payment charge on outstanding balances at an interest rate of 1.5% a month. Finally, the agreement allowed for the collection of attorney's fees, costs and expenses incurred by Fraser & Wise for any attempt, including litigation, to collect payment of the fee. (Docket Entry # 76, Ex. 1).

In May 1991, the Massachusetts Supreme Judicial Court ("the SJC") dissolved PPI–Massachusetts and ordered its assets transferred to PPI. (Docket Entry # 74, ¶ 3). All legal bills involved in the dissolution process of PPI–Massachusetts have been paid. (Docket Entry # 83, ¶ b).

In June of 1991, according to Attorney Wise, Swett telephoned him and he accepted Swett's proposal to act as General Counsel for PPI. Swett disagrees and attests that Attorney Wise was never General Counsel for PPI.[4] (Docket Entry # 83, ¶ a). Rather, Swett testified that Attorney Wise performed legal services for PPI on an as needed basis. (Docket Entry # 83, Ex. K; Docket Entry # 76, Ex. 7, p. 7). At a deposition, Swett testified that PPI had a written contract with Attorney Wise to render professional services for whatever work was needed.[5] (Docket Entry # 76, Ex. 6).

Q. Do you have or have you had a written contract with Steven Wise for professional services he rendered to Primarily Primates?
A. Yes, we—we did—
Q. Was that—
A. —have one. Yes.
Q. Was that in regard to all legal matters or services that he provided Primarily Primates,

Attorney Wise attests, however, that they entered into an agreement to abide by the terms of the client fee agreement between Fraser & Wise and PPI–Massachusetts. Attorney Wise asseverates that Fraser & Wise represented PPI and that he acted as the lead attorney. (Docket Entry # 74, ¶¶ 4 & 5).

Swett again disputes this testimony and avers that PPI never agreed to accept late payment charges as set forth in the client fee agreement.[6] (Docket Entry # 83, ¶ e). Swett reiterated by affidavit and by deposition that PPI never had a contract with Fraser & Wise as opposed to Attorney Wise individually. (Docket Entry # 83, ¶ a & Ex. K). With few exceptions, PPI issued checks for the payment of legal fees directly to Attorney Wise individually as opposed to Fraser & Wise. (Docket Entry # 83, ¶ a).

Stephen R. Tello ("Tello"), Corporate Secretary of PPI, similarly testified that PPI hired Attorney Wise, as opposed to Fraser & Wise, at an hourly rate of $110. Although Tello assumed that Attorney Wise had other individuals assisting him, Tello expressed surprise at viewing legal bills with charges for individuals billing at an hourly rate of slightly less than $100. He further testified that he questioned the authorization for these charges. Tello pointed out a number of unauthorized charges. (Docket Entry # 83, Ex. L).[7]

Viewing the record in PPI's favor, therefore, PPI had a contract, whether written or verbal, with Attorney Wise for Attorney Wise to perform legal services for PPI on an as needed basis. Also viewing the record in PPI's favor for summary judgment purposes, PPI did not hire or contract to pay for the services of Fraser & Wise. Nor did PPI authorize the payment of legal fees indiscriminately to all individuals at Fraser & Wise.[8]

From July 1991 to July 1993, Attorney Wise represented PPI on various matters.[9] Attorney Wise performed a significant amount of work on the case of *Carey Chevalier v. Animal Rehabilitation Center, et al.,* Civil Action No. 3:92–0489–X, also known as the Chevalier case, filed in the United States District Court for the Southern District of Texas and subsequently transferred to the United States District Court for the Northern District of Texas. Attorney Wise also worked at length on the case of *Primarily Primates, Inc. v. Lebsack,* Civil Action No. 92–0533, filed in the United States District Court for the Western District of Texas and also known as the Doelger case. (Docket Entry # 74, ¶¶ 5–7 & 14; Docket Entry # 76, Ex. 7).

In addition to these significant and litigious cases, Attorney Wise performed legal services for PPI on other matters. These matters include the Neil Buffum matter, the John Holrah matter, the Muriel Mackie matter, the Kurt Pankratz matter and other miscellaneous matters. Attorney Wise avers that PPI owes $59,079.95 for these services. (Docket Entry # 74; Docket Entry # 76, Ex. 4).

Attorney Wise further attests that from July 1991 to November 1992, PPI paid for the legal services rendered to it. By Thanksgiving of 1992, however, PPI began to

---

or was it limited to a particular job that he did for Primarily Primates?
A. To the best of my recollection, it was in general for whatever work he was put on.

6. Accordingly, this court resolves this dispute in Swett's favor and finds that the parties never agreed to adopt the payment of late charges or collection fees as set forth in the client fee agreement.

7. Although Attorney Wise averred that he attached excerpts of the deposition of Tello to his affidavit, the referenced exhibit only contains the title page of the deposition transcript. (Docket Entry # 76, Ex. 8).

8. As noted below, Swett stipulated that he had no evidence that the legal fees were unauthorized. Swett's stipulation that he has no evidence, however, is distinct from a stipulation that PPI has no evidence. Given the testimony of Tello and viewing the record in PPI's favor, there is evidence from which a jury could find that PPI did not agree to all of the charges submitted by Fraser & Wise to PPI for payment.

9. Again, although Attorney Wise avers that Fraser & Wise represented PPI, this court must view the record in PPI's favor and therefore concludes, for purposes of summary judgment only, that Attorney Wise, as well as a number of individuals assisting Attorney Wise, represented PPI.

fall behind in its payments. Attorney Wise also states that he repeatedly requested payment of these outstanding fees from PPI. (Docket Entry # 74).

Tello began reviewing the legal bills submitted by Fraser & Wise in 1992. His review at that time, however, only consisted of minor bookkeeping. In early 1993 Tello, together with Maggie Rodriguez ("Rodriguez"), an accountant at PPI, began taking a closer look at the invoices. Tello had several conversations with Rodriguez during this time and in the spring of 1993. (Docket Entry # 83, Ex. L). Swett similarly testified that in May and June of 1993 two individuals at PPI began questioning the legitimacy of a number of the bills submitted by Attorney Wise and/or Fraser & Wise.[10] (Docket Entry # 83, Ex. K).

Tello initially noticed duplicate billings and a number of instances where fees increased twofold from one month to the next. Tello therefore began to question the legitimacy of the billings. Although lacking prior experience in the manner in which attorneys bill clients, Tello testified about a number of unauthorized charges including certain facsimile charges. He particularly noted charges for attorneys other than Attorney Wise who billed at an hourly rate of $90 or $100. He explained that it appeared as though PPI was paying for the services of two lawyers when it had agreed only to hire Attorney Wise. According to Tello, PPI entered into a contract for legal representation with Attorney Wise as opposed to Fraser & Wise. Tello surmised that there was never a written contract with Fraser & Wise because such a contract would have to be approved by the trustees of PPI. (Docket Entry # 83, Ex. L).

In response to inquiries about the billings from Attorney Wise, Tello repeatedly advised him that, "We're working on it." Tello wanted to make sure that he understood "when things happened [and] why things happened." Tello acknowledged that he did not ask Attorney Wise or anyone else at Fraser

& Wise to explain the unauthorized charges. (Docket Entry # 83, Ex. L).

In the spring of 1993, Attorney Wise worked extensively on settling the Doelger case. The parties entered into mediation in March 1993 and eventually settled the case for a total of $400,000 with a four year payout. Attorney Wise asseverates that he negotiated a provision in the settlement whereby PPI was allowed to withdraw $100,000, as opposed to $50,000, in the first year. Attorney Wise attests that he and Swett agreed that the purpose of this provision was to pay Fraser & Wise's outstanding legal bills. (Docket Entry # 74). Swett, however, impliedly denies this arrangement and explains that no portion of the $100,000 settlement "was earmarked for legal fees."[11] The settlement agreement includes an integration clause and allows PPI to draw up to the maximum of $100,000 within ten days of the receipt by the Doelger Trust of certain financial and tax documents. (Docket Entry # 83, ¶ i; Docket Entry # 76, Ex. 3).

In late June 1993, PPI withdrew the initial $100,000 settlement payment from the account established for the judgment monies and maintained by A. G. Edwards Company. (Docket Entry # 76, Ex. 3; Docket Entry # 74; Docket Entry # 83, ¶ f). Shortly thereafter, Attorney Wise sent Swett a letter requesting that PPI make an immediate payment of the $59,079.95 in outstanding legal bills. (Docket Entry # 76, Ex. 4; Docket Entry # 74).

Swett responded with a facsimile transmission dated June 30, 1993. (Docket Entry # 83, Ex. F). Therein, Swett advised Attorney Wise that PPI would not pay the legal bills "pending full analysis." The facsimile transmission noted several areas of concern such as the cost of lodging and meals and billings in excess of estimates. (Docket Entry # 83, Ex. F). Swett avers that PPI has never refused to make payments and has paid Attorney Wise an estimated $38,000 in legal fees. (Docket Entry # 83, ¶ f).

---

10. Swett, unlike Tello, however, stipulated that he had no evidence of any unauthorized charges submitted to PPI from Fraser & Wise and/or Attorney Wise.

11. Again, this court is obligated to draw reasonable inferences from the facts in PPI's favor and on summary judgment must resolve disputed factual issues in favor of the nonmovant.

By letter dated July 1, 1993, Attorney Wise demanded an immediate itemization and explanation of all disputed charges on or before July 9, 1993. Attorney Wise additionally requested full payment of all undisputed charges on or before July 9, 1993. (Docket Entry # 76, Ex. 5). PPI issued a check dated July 10, 1993, in the amount of $20,000 to Fraser & Wise with the notation "1st payment legal fees—Doelger case." (Docket Entry # 83, Ex. H). By letter dated July 19, 1993, Swett and Tello directed Attorney Wise not to perform any further legal services for PPI. The letter also explained that PPI was halting its review of the legal bills due to missing records but assured Attorney Wise that, "It is not our intent to delay any payment earned." (Docket Entry # 83, Ex. F). By letter dated July 21, 1993, Attorney Wise informed Swett and Tello that he would not accept any monies tendered by them for payment of his legal fees inasmuch as their representation of PPI was improper.[12] (Docket Entry # 83, Ex. I). Swett avers that the $20,000 check was therefore voided upon the receipt of Attorney Wise's July 21, 1993 letter. (Docket Entry # 83, ¶ g).

Attorney Wise avers that to date PPI has not paid any portion of the $59,079.95 owed "under the contract." (Docket Entry # 74, ¶ 12). In the event no express contract exists, Justice George N. Hurd ("Justice Hurd"), a retired Associate Justice of the Superior Court of Massachusetts, attests, after a full and comprehensive review of the legal charges, that a fair and reasonable fee for services provided by Fraser & Wise to PPI would be $92,500 plus expenses of $9,129. (Docket Entry # 75).

As a final matter, in seeking summary judgment, Fraser & Wise relies on two stipulations, one entered into by Swett during a deposition and the other entered into by counsel for PPI during a December 9, 1994 hearing before this court. The first stipulation undoubtedly constitutes evidence and forms part of the summary judgment record. Therein, Swett stipulated that he "has no evidence that any of the time billed and the

expenses and costs set forth" in an exhibit, presently exhibit nine to the affidavit of Attorney Wise (Docket Entry # 76, Ex. 9), "were unauthorized." (Docket Entry # 76, Ex. 7). Swett further stipulated that he "has no evidence that any of the time billed in the [aforementioned exhibit] were not actually expended." Finally, he stipulated that he "has no evidence that any of the costs and expenses set forth in [the aforementioned exhibit] were in fact not incurred and paid for by Fraser & Wise." (Docket Entry # 76, Ex. 7).

■ The second stipulation is more problematic. In a reply memorandum, counsel for Fraser & Wise states that in open court on December 9, 1994:

the parties stipulated that (1) no evidence exists that the time billed by the plaintiff and expenses and costs it incurred on behalf of the defendant were unauthorized, (2) no evidence exists that the time for which the plaintiff billed was not actually expended, (3) no evidence exists that the costs and expenses billed by the plaintiff, on behalf of the defendant, were not in fact incurred and paid for by Fraser & Wise and (4) the evidence the defendant would present as to the reasonableness of plaintiff's fees would be restricted exclusively to the expert report by Legalguard that the defendant had produced to the plaintiff pursuant to FRCP 26(a)(2)(B).

(Docket Entry # 90). Arguments, statements or assertions by counsel "in a legal memorandum are insufficient to establish the existence of a genuine issue of material fact." *Transurface Carriers, Inc. v. Ford Motor Company,* 738 F.2d 42, 46 (1st Cir.1984). Fraser & Wise did not submit an affidavit by Attorney Wise testifying to the exact content of the stipulation. Nor did Fraser & Wise submit an express, agreed upon statement concerning the wording of the stipulation which they understandably assumed was contained in the court's records. PPI also did

---

12. The events which took place in July 1993 are the subject of the Texas case. Because it is unnecessary to reach the conduct which occurred in July 1993 in order to recommend the denial of the summary judgment motion, it is also not necessary to address the effect of the Texas litigation at this time. *See* footnote number one.

not submit an affidavit concerning this stipulation.

 Stipulations by counsel made in open court nevertheless constitute "admissions on file" within the meaning of Rule 56(c), Fed.R.Civ.P. See 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (1983) ("admissions need not be pursuant to Rule 36" but may occur during pretrial conferences, oral argument on the motion, joint statements or stipulations); 6 James Wm. Moore, *Moore's Federal Practice* ¶ 56.11[1.–5] (1996) (admissions, for Rule 56(c) purposes, may be made at pretrial conference). It is also true that this "court should not hesitate to look at its own records to see what they disclose" in order to resolve a summary judgment motion. *Concordia v. Bendekovic,* 693 F.2d 1073, 1076 (11th Cir. 1982) (dicta paraphrasing a Fourth Circuit case). Such records, provided they consist of more than argument, unverified pleadings or assertions by counsel and thereby constitute proper pleadings for summary judgment review under Rule 56(c) and (e), Fed.R.Civ.P., form part of the record for summary judgment.

 Accordingly, this court reexamined the electronic recording of the December 9, 1994 hearing in order to determine the exact wording of the stipulation and therefore its effect upon summary judgment proceedings. Unfortunately, through an apparent error during the taping of the hearing or an error in a subsequent attempt to transcribe the hearing by recording services used by this court, the tape of the hearing is now blank.[13] Due to these circumstances, it is difficult if not impossible at this time to ascertain the content of the stipulation. Accordingly, this court will recommend denial of the motion for summary judgment, in part, with prejudice and, in part, without prejudice. The

recommended denial without prejudice is limited to allowing the parties an opportunity to submit additional affidavits or notes made by them at the December 9, 1994 hearing concerning the content of the stipulation. Alternatively, the parties may submit an agreed statement as to the content of the stipulation. In light of the present state of the record, however, this court cannot accept the unsupported assertions of counsel in a brief about a stipulation in order to resolve the summary judgment motion.

## DISCUSSION

Turning to the respective counts under which Fraser & Wise seeks summary judgment, Count I alleges the breach of an express contract. Fraser & Wise theorizes that the Attorney Wise and Swett adopted the terms of the client fee agreement between PPI–Massachusetts and Fraser & Wise to apply to the fee arrangement agreed upon during the June 1991 telephone conversation between Swett and Attorney Wise. (Docket Entry # 73).

 The only conceivable written contract is the client fee agreement. This "contract," however, was not entered into by PPI. In addition, by its terms, the agreement was for legal services "to dissolve [PPI–Massachusetts]." (Docket Entry # 76, Ex. 1). Interpretation of a contract ordinarily presents an issue of law for the court. *Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115, 1122 (1st Cir.1995). In this instance, however, there was no written, integrated agreement as a matter of law. *See Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d at 1123 (defining an integrated, written agreement). Consequently, to the extent there was a breach of an express contract, it was a breach of an

---

**13.** This court can only surmise that the actual taping of the proceedings was ineffective due to an error on the part of the courtroom deputy or to faulty equipment. Alternatively, an error may have occurred during a transcription process. This court sincerely regrets the error and will allow the parties an opportunity to submit further papers concerning the content of the stipulation. Accordingly, this court's recommendation is to deny the summary judgment motion without prejudice. The recommendation to deny the motion without prejudice is limited to allowing the parties to submit further evidence of the stipulation and to therefore allow Fraser & Wise the opportunity to renew its motion for summary judgment limited to the effect of the stipulation. In all other respects this court recommends denial of the motion for summary judgment with prejudice.

oral contract.[14]

Here, the parties disagree as to what occurred during the June 1991 telephone conversation between Swett and Attorney Wise. Swett attests that PPI did not enter into a legal services contract with Fraser & Wise as of July of 1991 and did not adopt the client fee agreement between PPI–Massachusetts and Fraser & Wise. According to Swett, PPI had an ad hoc arrangement with Attorney Wise whereby PPI would use Attorney Wise's services on an as needed basis.

In contrast, Attorney Wise attests that during the June 1991 telephone conversation he agreed with Swett to become the General Counsel of PPI and that the terms of the client fee agreement would apply to all future work performed for PPI.

■■■ Thus, there are genuine issues of material fact as to whether the parties intended to form an express contract between Fraser & Wise and PPI for the payment of legal services at the $110 hourly rate including the costs of collecting the fee. The parties disagree as to what entities or individuals entered into the contract.[15] They also disagree as to the scope of Attorney Wise's duties, whether he could charge PPI for any services performed by other Fraser & Wise employees and whether PPI employed Attorney Wise on an as needed basis for a limited period of time. Failure of the parties to agree on the essential terms of a contract precludes the existence of an express contract. *See Mass Cash Register, Inc. v. Comtrex Systems Corporation*, 901 F.Supp. 404, 418 (D.Mass.1995); *see also Hurwitz v. Parkway Country Club, Inc.*, 343 Mass. 661,

180 N.E.2d 94, 96 (1962) (no price fixed in oral contract and the defendant/corporation only became liable for fair and reasonable value of the plaintiff's services); *Novel Iron Works v. Wexler Construction Company*, 26 Mass.App.Ct. 401, 528 N.E.2d 142, 146 (there must be agreement on "essential terms of the transaction in order that the nature and extent of the parties' obligations can be determined and, hence, enforced"), *review denied*, 403 Mass. 1104, 530 N.E.2d 797 (1988); *Held v. Zamparelli*, 13 Mass.App.Ct. 957, 431 N.E.2d 961, 962 (1982).[16] Summary judgment is therefore inappropriate under Count I.

■■■ The possible nonexistence of a contract does not necessarily foreclose recovery under an implied contract theory. *See General GMC, Inc. v. Volvo White Truck Corporation*, 918 F.2d 306, 309 (1st Cir.1990) (reversing dismissal of breach of contract claim inasmuch as trial court should have explored possibility of existence of implied contract); *Bushkin Associates, Inc. v. Raytheon Company*, 815 F.2d 142, 150–151 (1st Cir.1987) (reversing directed verdict inasmuch as jury could have found contract implied in fact based on conduct of the parties). An implied in fact contract generally arises where the plaintiff confers measurable benefits upon another party, the defendant accepts the services with the expectation of compensating the plaintiff and the plaintiff demonstrates that he provided the services with the reasonable expectation of receiving compensation. *General Electric Company v. Lyon*, 894 F.Supp. 544, 554 (D.Mass.1995);

14. The client fee agreement, however, may constitute evidence of the terms of the oral agreement.

15. Although Swett testified that PPI had a general contract with Wise such a contract was for "whatever work [Wise] was put on." (Docket Entry # 76, Ex. 7). Moreover, Swett clarified this testimony by explaining that PPI used "Wise's services on an ad lib basis." (Docket Entry # 83, Ex. K). He also clarified that PPI did not have a contract with Fraser & Wise.

16. This court does not mean to suggest that PPI is entitled to summary judgment on Count I alleging the breach of an express contract. To the contrary, based on the present record, the evidence weighs in favor of Fraser & Wise with respect to this count. In particular, the evidence indicates but does not establish that Fraser & Wise and PPI entered into an oral contract in June of 1991 agreeing to incorporate certain provisions in the client fee agreement. The jury may indeed find that PPI agreed to employ Attorney Wise at an hourly rate of $110 for a reasonable period of time and further agreed to reimburse Attorney Wise for the costs incurred in collecting the fee. It is neither the province nor the function of this court, however, to weigh the evidence where, as here, there are materially disputed facts which, construed in PPI's favor, would not entitle Fraser & Wise to recover under Count I.

*Bolen v. Paragon Plastics, Inc.,* 747 F.Supp. 103, 106–107 (D.Mass.1990).

Fraser & Wise essentially cites these elements in their argument seeking summary judgment under Count III, entitled "Work." Indeed, one of the cases cited and relied upon by Fraser & Wise, *Massachusetts General Hospital v. Brody,* 16 Mass. App.Ct. 993, 454 N.E.2d 1281, 1282 (1983), describes these elements as the basis of an implied contract. Accordingly, to the extent Fraser & Wise establishes these elements as a matter of law, they are entitled to summary judgment under Count III which this court prefers to characterize as a cause of action based on an implied in fact contract rather than a cause of action based on work.

According to the testimony of Tello and Swett, viewed in the light most favorable to PPI, a jury could find that PPI only agreed to accept the services of Attorney Wise as opposed to the services of any and all employees at Fraser & Wise. A jury could also find that PPI expected to compensate Attorney Wise for certain services but did not expect to compensate Fraser & Wise for legal services rendered by all other Fraser & Wise employees. Again, while the evidence does not weigh in PPI's favor and this court would not necessarily agree with such a finding, such evidence is sufficient to withstand summary judgment under Count III.

Count II seeks recovery under an "account annexed" for $59,079.95. Fraser & Wise attaches the itemized services rendered to the complaint. Quoting *Lucier v. Young,* 338 Mass. 671, 156 N.E.2d 798 (1959), Fraser & Wise contends it can recover on an account annexed "upon proof that services were rendered for which the defendant promised to pay a stated or determinable amount." (Docket Entry # 73, p. 6). The theory propounded by Fraser & Wise therefore appears contractual in nature.[17]

Recovery under an account annexed exists where there is "an implied contract to pay the plaintiffs if they did the work according to the contract." *Altman v. Goodman,* 255 Mass. 41, 150 N.E. 834, 835 (1926); *accord Hayes v. Guy,* 348 Mass. 754, 205 N.E.2d 699, 701 (1965) ("recovery may be had on an account annexed in cases where money is due under a contract, provided the plaintiff has fully performed his part of the contract"); *Donahue v. Dal,* 314 Mass. 460, 50 N.E.2d 207, 208 (1943) (the plaintiff may recover value of his services under account annexed where the defendant concedes existence of a contract and the defendant breached the contract). Complete performance of the contract is not required provided "there is proof of honest intention and attempt to perform the contract completely, and in fact substantial performance on it." *Searls v. Loring,* 275 Mass. 403, 176 N.E. 212, 213 (1931).

In addition, a plaintiff cannot recover under this theory merely by supplying services to the defendant. *Altman v. Goodman,* 150 N.E. at 835. Rather, both parties to the contract should expect that the plaintiff would be paid for the services rendered. *See Hurwitz v. Parkway Country Club, Inc.,* 180 N.E.2d at 96 (recovery under second count for account annexed possible if evidence showed that the defendant and the plaintiff expected that the plaintiff "would be paid for his services").

There need not, however, be proof that the parties agreed upon a particular price or amount. *See Hurwitz v. Parkway Country Club, Inc.,* 180 N.E.2d at 96 ("where no price was fixed," the defendant became liable under account annexed for "the fair and reasonable worth of the plaintiff's services"); *Altman v. Goodman,* 150 N.E. at 835 (where the plaintiff failed to recover on the allegedly agreed upon price of $3,000, "there might be an implied promise to pay a reasonable sum" under second count for ac-

17. Massachusetts law also interprets recovery under account annexed as based on quantum meruit. *See, e.g., Humes v. Barron,* 263 Mass. 583, 161 N.E. 592 (1928) (third count under account annexed based upon quantum meruit); *Rudnicki v. Stetson Window Corporation,* 348 Mass. 769, 202 N.E.2d 260, 260–261 (1964). In addition, former pleading requirements in Massachusetts allowed a plaintiff to declare on an account annexed and thereby state "by legal intendment ... all allegations contained in all common counts." *Rudnicki v. Stetson Window Corporation,* 202 N.E.2d at 261 (collecting cases):

78

count annexed). Under an account annexed with an agreement having been made, the defendant is ordinarily liable for the value of what the plaintiff's services were worth. *Altman v. Goodman*, 150 N.E. at 835 ("with the agreement having been made, if the plaintiffs did their part, they could recover on the second [account annexed] count, what their services were actually worth"); *accord Hurwitz v. Parkway Country Club, Inc.*, 180 N.E.2d at 96; *Clayton v. Modern Shrinking & Refinishing Company*, 341 Mass. 731, 170 N.E.2d 355, 355–356 (1960) (recovery under account annexed is for "the fair value of [the plaintiff's] services" if warranted under the evidence).

■■■■ In the case at bar, the evidence is disputed as to the existence of a contract including the identity of the parties to such a contract. Tello also disputed the legitimacy of the amounts requested in various invoices. The fact that Swett testified that he had no evidence as to the unauthorized nature of any services rendered by Attorney Wise does not establish as a matter of law that PPI has no evidence that the time billed was not authorized or not expended. Whether Attorney Wise and/or Fraser & Wise therefore substantially preformed the contract cannot be determined as a matter of law. Alternatively, the fair and reasonable value of the services supplied by Fraser & Wise and/or Attorney Wise is disputed as shown through Attorney Dobbins' affidavit and/or Tello's testimony.

Fraser & Wise also moves for summary judgment on Count V for quantum meruit recovery. Specifically, Fraser & Wise moves for summary judgment under Count V and asserts it is entitled to recover $92,500 in fees, $9,129 in expenses, and costs as the fair and reasonable value of the services provided to PPI. In seeking summary judgment and arguing its entitlement to relief under Count V, Fraser & Wise states that, "the fair and reasonable value of plaintiff's services must be determined." Fraser & Wise does not move for partial summary judgment under Count V. (Docket Entry # # 72–75 & 90).

■■■■ Unlike counts I through III, Count V for quantum meruit generally provides recovery in the absence of a contract.

See *Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority*, 7 Mass.App.Ct. 336, 387 N.E.2d 206, 209–210 (1979). "The amount of recovery in a claim based in quantum meruit is the fair and reasonable value of material and labor supplied to the benefiting party." *J.A. Sullivan Corporation v. Commonwealth*, 397 Mass. 789, 494 N.E.2d 374, 379 (1986). Even assuming for purposes of argument only that Fraser & Wise is entitled to recover under quantum meruit, however, the issue of the amount of such a recovery is a question of fact.

■■■■ "The question of what is fair and reasonable compensation for the services rendered is a question of fact." *J.A. Sullivan Corporation v. Commonwealth*, 494 N.E.2d at 379; *Boston Athletic Association v. International Marathons, Inc.*, 392 Mass. 356, 467 N.E.2d 58, 65 (1984) (quoting identical language and emphatically stating, "It is a question for the fact finder to decide").

■■■■ In assessing the fair and reasonable value of the services rendered, there are a number of "factors for the fact finder to consider." *Boston Athletic Association v. International Marathons, Inc.*, 467 N.E.2d at 65. In determining the amount under a quantum meruit recovery, the SJC has set forth the following factors:

the ability and reputation of the attorney, the demand for his services by others, the amount and importance of the matter involved, the time spent, the prices usually charged for similar services by other attorneys in the same neighborhood, the amount of money or the value of the property affected by controversy, and the results secured.

*Cummings v. National Shawmut Bank of Boston*, 284 Mass. 563, 188 N.E. 489, 492 (1934); *McLaughlin v. Old Colony Trust Company*, 313 Mass. 329, 47 N.E.2d 276, 280 (1943) (quoting *Cummings*); *Salvini v. Flushing Supplies Corporation*, 137 F.R.D. 190, 193 (D.Mass.1991) (citing *Cummings* factors as relevant criteria for quantum meruit recovery). No one factor is determinative. *Margolies v. Hopkins*, 401 Mass. 88, 514 N.E.2d 1079, 1082 (1987).

In support of summary judgment recovery of $92,500 in fees and $9,129 in expenses, Fraser & Wise submitted the testimony of Justice Hurd. Justice Hurd analyzed in depth each of the aforementioned factors. (Docket Entry # 75).

Justice Hurd's affidavit, however, does not comprise the entire summary judgment record on the issue of the fair and reasonable value of Fraser & Wise's services. PPI submits the expert testimony of Attorney Dobbins. In addition, Tello testified to the duplicative nature of a number of charges and the excess number of attorneys involved at various times.

▮ Expert testimony concerning the fair and reasonable value of services rendered by an attorney is not required but "may be taken." *Neville v. Eufaula Bank & Trust Company*, 639 F.2d 1197, 1202 (5th Cir.1981) (appeal from bankruptcy proceeding). In arriving at a reasonable attorney's fee, a court is "not bound by the expert's testimony" and "is free within the permissible bounds of discretion to evaluate the amount of time fairly spent ... in arriving at a reasonable fee." *Arico v. Cie. De Navegacion Transoceanique*, 409 F.2d 1002, 1003–1004 (2nd Cir.1969). Both trial and appellate courts "are themselves experts as to the reasonableness of attorneys' fees." *Brown v. Culpepper*, 561 F.2d 1177, 1177 (5th Cir.1977); *see, e.g., Salvini v. Flushing Supplies Corporation*, 137 F.R.D. at 194 ("court is well acquainted with the prevailing rates" of attorneys in the area).

Numerous courts nevertheless accept and consider the testimony of experts in determining a reasonable fee award. *See, e.g., Mulhern v. Roach*, 398 Mass. 18, 494 N.E.2d 1327, 1334 (1986) (action seeking award of reasonable attorney's fee wherein judge, as finder of fact, heard testimony of expert concerning usual fee charged in area for subject matter involved); *Santry v. Richman*, 6 Mass.App.Ct. 955, 383 N.E.2d 514, 515 (1978) (finding sufficient evidence due to expert's testimony to support jury's factual determination of $1,200 as reasonable attorney's fee); *see also Collins v. Romer*, 962 F.2d 1508,

1514–1515 (10th Cir.1992) (evidentiary hearing in which court heard expert testimony concerning reasonableness of attorney's fees); *Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir.1991) (noting lower court's consideration of expert testimony and finding no error in calculation of hourly rate); *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir.1990) (finding no error in fee award wherein court considered expert testimony); *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3rd Cir.1990) (dicta noting in civil rights litigation that counsel should use expert testimony to establish necessity for contingency factor in attorney's fee determination); *Hines v. J.A. La-Porte, Inc.*, 820 F.2d 1187, 1190 (11th Cir.1987) (affirming attorney's fee award as supported by evidence including expert testimony); *Hefley v. Jones*, 687 F.2d 1383, 1389 (10th Cir.1982) (finding sufficient proof of value of attorney's services, noting hearing was held with expert witnesses and finding "no legal issue").

▮ In the case at bar, the evidence is disputed. The report generated by Legalguard and conducted by Attorney Dobbins questions the necessity of utilizing a team of four attorneys and four paralegals to work on relatively straightforward disputes. According to the report, charging PPI for interoffice conferencing is inappropriate. The report additionally notes areas of duplicate billing and excessive and unnecessary charges for research of elementary subjects. (Docket Entry # 83, Ex. A). These concerns raise factual issues regarding the time spent and prices charged for similar services notwithstanding the affidavit of Justice Hurd. Similarly, Tello testified to noticing duplicate billings and the use of attorneys charging hourly rates only marginally below the $110 hourly rate of Attorney Wise. (Docket Entry # 83, Ex. L). The testimony of Attorney Dobbins and Tello, standing alone or together, sufficiently creates factual disputes concerning the fair and reasonable value of the services rendered by Fraser & Wise to PPI.[18] Summary judgment is therefore inadvisable on Count V.

18. In reaching this conclusion, this court has fully considered the affidavit of Justice Hurd.

## CONCLUSION

In accordance with the above discussion, this court **RECOMMENDS** [19] that plaintiff's motion for summary judgment (Docket Entry # 72) be **DENIED** without prejudice, in part, and with prejudice, in part, to the extent set forth in footnote number 13. This court further **ORDERS** that: (1) plaintiff's motion for an order that no material facts are in dispute (Docket Entry # 97) is **DENIED**; (2) plaintiff's motions to strike (Docket Entry # 86 & 88) are **DENIED**; (3) plaintiff's motion to strike the replacement affidavit (Docket Entry # 95) and motion to strike PPI's motion for leave to file the replacement affidavit (Docket Entry # 104) are **DENIED** as moot; and (4) plaintiff's motion for sanctions (Docket Entry # 109) is **DENIED**.

**19.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).