I respectfully dissent. The United States Supreme Court has, perhaps unwittingly, declared conflicting, mutually exclusive standards for judging whether probable cause to search exists; and the main opinion has chosen the one of these two standards that violates the defendant's due process rights and that also violates established principles governing the admissibility and consideration of expert testimony. I respectfully submit that we should choose and follow the other of the two standards, the one which preserves due process and honors established rules of evidence.
One of the two standards, in my opinion the correct one, is the objective standard of the person of reasonable caution. "[I]n *Page 727 
making that assessment it is imperative that the facts be judged against an objective standard: would facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, 392 U.S. 1,21-22 (1968). "Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)) (internal quotation marks omitted).
The other of the two standards, in my opinion the incorrect one, is deference to the "police officer view[ing] the facts through the lens of his police experience and expertise." Ornelas v. United States,517 U.S. 690, 699 (1996). "[A] police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yieldinferences that deserve deference." Id. (Emphasis added.)
The conflict between these two standards is that the "police officer view[ing] the facts through the lens of his police experience and expertise," id., is neither objective nor reasonably cautious. The case before us supplies apt examples.
"Objective" means "involving or deriving from sense perception or experience with actual objects, conditions or phenomena."Merriam-Webster's Collegiate Dictionary 801 (10th ed. 1997). The police officer in this case, through "the lens of his police experience and expertise," "views" every Tic-Tac box and every matchbox as a likely repository of illegal drugs. Of course, of the tens of millions of Tic-Tac boxes and matchboxes manufactured and sold by the Tic-Tac and matchbox companies and carried by members of the general public, most contain Tic-Tacs and matches, respectively. Indeed in bars like Grand Central Station, where the patrons typically want to attract each other and light their own and each other's cigarettes, these boxes usually contain Tic-Tacs and matches, respectively.
When a narcotics police officer does seize a small quantity of an illegal drug, it will likely be inside a small container, perhaps a Tic-Tac box or a matchbox. But this "police experience" does not support an inference that all Tic-Tac boxes and matchboxes, or even a significant percentage of them, contain illegal drugs any more than the observation that all platypuses are mammals supports the inference that all mammals, or even a significant percentage of them, are platypuses. Rather, the police officer is simply indulging the classic and patently unobjective fallacy that, because all members of a subset are also members of the main set, all members of the main set must be members of the subset. The same analysis applies equally to all of the acts and activities the officer cited as support for his claim to probable cause in the case before us.
And why does the police officer indulge this classic fallacy? Because all of the incentives of his mission militate against his exercising "reasonable caution."
While I have not found a definition for "reasonable caution" in the context of the law of probable cause, the term must mean reasonable deference to the likelihood that the conduct or object is innocent. Yet the goal of the narcotics officer on a narcotics mission to seize illegal drugs requires that the officer find probable cause against *Page 728 
enough citizens to conduct enough searches eventually to find and to seize some illegal drugs. Every incentive militates in favor of relying on mere possibilities of guilt instead of deferring to reasonable likelihoods of innocence. The officer will not receive any promotions, awards, or kudos for deferring to the likelihoods of innocence.
Thus the two standards declared by the United States Supreme Court, the objective standard of the person of reasonable caution on the one hand and deference to the "police officer view[ing] the facts through the lens of his police experience and expertise" on the other hand, are not reconcilable in any realistic sense. The main opinion in the case before us relies on the second of these standards, deference to the police officer. It is wrong for two cardinal reasons.
First, the standard of deference to the police officer deprives the defendant of due process of law. To the extent that the trial judge defers to the inferences of the police officer, the defendant's case is being judged by the police officer.
 "It is elementary that a fair trial in a fair tribunal is a basic requirement of due process. A necessary component of a fair trial is an impartial judge."
Weiss v. United States, 510 U.S. 163, 177 (1994) (internal citation and quotation marks omitted).
 "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law.
 ". . . A situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial, necessarily involves a lack of due process of law in the trial of defendants charged with crimes before him. . . ."
Tumey v. Ohio, 273 U.S. 510, 532-34 (1927). The police officer is naturally biased in favor of finding probable cause. To the extent that the trial judge defers to the police officer, the trial judge inflicts this bias on the defendant and deprives him or her of due process of law.
This problem is exacerbated by the unverifiability of the police officer's testimony to acts and activities officers typically cite and courts typically accept as support for probable cause. After an officer searches a citizen and finds illegal drugs, the officer can, usually without likelihood of any effective contradiction, fabricate or imagine through his "lens" any number of movements, gestures, glances, acts, and actions to characterize as "furtive" or otherwise typical of or consistent with drug possession or transfer. In the case before us, for example, the officer testified at the suppression hearing that, from his balcony seat across the bar from the men's restroom, he saw Clint Adkinson pass something to another man in exchange for money after
Adkinson and the other man had entered the restroom and before the closing door blocked the view. At the preliminary hearing, which preceded the suppression hearing by some months, the officer testified only:
 "We had noticed [Adkinson] going to the bathroom that was just down from where we were at, maybe 15 or 20 feet from where we were at. He went into the bathroom with another guy. Shortly after they went into the bathroom, the other guy came out and nodded his head to some other guy, who we didn't know. And we still don't know the guy that went into the bathroom with [Adkinson], but he nodded his head [to the other *Page 729 
unknown man] and them two guys (the two unknown men) walked on down stairs. So, we kind of thought that there might have been a deal taking place."
(C.R. 42, emphasis added.) Although this testimony, ostensibly the truth, the whole truth, and nothing but the truth on this topic from the preliminary hearing, was before the trial judge for the suppression hearing, he accepted the additional "facts," supplied by the officer's lensmanship, to the effect that the officer observed an actual exchange of something for money inside the bathroom.
The second reason the standard of deference to the police officer is wrong is that deference to his "expertise" violates established principles governing expert testimony. Rule 702, Ala. R. Evid., reads:
 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
While the smell or appearance of certain narcotics may be a topic of "specialized knowledge," hardly any of the other bases police officers typically cite for their claim to probable cause are topics of either "scientific, technical, or other specialized knowledge." What Tic-Tac boxes, matchboxes, and film canisters ordinarily contain, can contain, and sometimes contain is hardly "scientific, technical, or specialized knowledge." Discussing the officer in this case, the main opinion also recites:
 "On some occasions he had worked undercover, actually `buying the dope from people,' which had given him personal knowledge about `how those type transactions take place.' In that regard, he had learned that `the biggest part is just watching peoples' hands and watch what their hands do, where there hands go . . . passing the dope or the money.'"
870 So.2d at 715. While the officer's testimony to the activities of "peoples' hands" may be the product of his attention to this topic, it is not the product of "scientific, technical, or other specialized knowledge."
Moreover, mandatory deference to the police officer's "expertise" is an aberration in the otherwise dominant caselaw to the effect that the trier of fact need not accept the opinions or conclusions of expert witnesses. "[O]pinions testified to by an expert are certainly not binding on the court." Mopkins v. St. Louis Die Casting Corp., 569 F.2d 454, 455 (8th Cir. 1978). "[T]he judge is not bound to accept the opinion of any expert witness or group of expert witnesses." United States v. Ecker,543 F.2d 178, 184 (D.C.App. 1976). "[A] trial court as fact finder `need not be bound by expert testimony even if all of the witnesses are presented only by one side.'" United States v. Esle, 743 F.2d 1465, 1474
(11th Cir. 1984) (quoting United States v. Pitts, 428 F.2d 534, 536 (5th Cir. 1970)). Accord United States v. Bautista-Avila, 6 F.3d 1360, 1366
(9th Cir. 1993); United States v. Glover, 596 F.2d 857, 865 (9th Cir. 1979); Bordas Co. v. Pizarro Serrano, 314 F.2d 291, 293 (1st Cir. 1963); Phillips v. Parke, Davis Co., 869 F.2d 407, 409 (8th Cir. 1989); Fraser Wise, P.C. v. Primarily Primates, Inc., 966 F. Supp. 63,78 (D.Mass. 1996); Arico v. Cie De Navegacion Transoceanique,409 F.2d 1002, 1003 (2d Cir. 1969); Hamling v. United States, 418 U.S. 87,100 (1974); and United States v. Locascio, 6 F.3d 924, 937 (2d Cir. 1993). See Alabama Pattern Jury Instructions: Civil 15.09 (2d ed. 1993).
In the case before us, the testimony of the officer, even if true, to the series of acts and actions by Clint and the defendant, *Page 730 
if considered with objectiveness and reasonable caution, supports only the conclusion that, before the search, possible cause, not probable cause, existed to believe that the defendant possessed an illegal drug. The United States Supreme Court has confronted us with two conflicting standards. We can neither faithfully follow both nor reconcile the two. Thus, for the reasons I have explained, I respectfully submit that we should choose and follow the objective standard of the person of reasonable caution instead of the standard of deference to the police officer and that we should, accordingly, hold this search and seizure illegal and reverse the judgment and remand this cause for retrial or other appropriate proceedings.